*Young Lee, As Victim's Representative v. State of Maryland, et al.*, No. 1291, September Term, 2022.  Opinion by Graeff, J.

**CRIMINAL PROCEDURE — VICTIMS' RIGHTS — VACATUR OF CONVICTIONS — NOLLE PROSEQUI — MOOTNESS**

The State's entry of a nolle prosequi did not render the Mr. Lee's appeal moot under the circumstances of this case.  Although the State's Attorney generally has broad discretion, free from judicial control, to enter a nolle prosequi, this authority is not unfettered.  Rather, the courts will temper the State's authority in exceptional circumstances, such as where entry of a nolle prosequi violates fundamental fairness, and in at least some circumstances, where it circumvents the right to appeal.

The entry of the nol pros in this case, entered shortly before a response to Mr. Lee's motion to stay proceedings was due, and before the 30-day deadline provided by Maryland Rule 4-333(i) for the State to either enter a nolle prosequi or take other appropriate action, was done with the purpose or "necessary effect" of preventing Mr. Lee from obtaining a ruling on appeal regarding whether his rights as a victim's representative were violated. Under the unique facts and circumstances of this case, exceptional circumstances exist to temper the authority of the State to enter a nol pros.  The nol pros was void, it was a nullity, and it does not render this appeal moot.

Md. Code Ann., Crim. Proc. Art. ("CP") § 8-301.1(a) (Supp. 2022) provides that, on the State's motion, the court may vacate a conviction under certain circumstances.  The statute provides victims with the right to prior notice of the hearing on a motion to vacate and the right to attend the hearing.  CP § 8-301.1(d). These rights were violated in this case, where the State gave Mr. Lee notice only one business day before the hearing, which was insufficient time to reasonably allow Mr. Lee, who lived in California, to attend the hearing in person, and therefore, the court required Mr. Lee to attend the hearing remotely.

Although remote proceedings can be valuable in some contexts, where, as here, a crime victim or victim's representative conveys to the court a desire to attend a vacatur hearing in person, all other individuals involved in the case are permitted to attend in person, and there are no compelling reasons that require the victim to appear remotely, a court requiring the victim to attend the hearing remotely violates the victim's right to attend the proceeding.  Allowing a victim entitled to attend a court proceeding to attend in person, when the victim makes that request and all other persons involved in the hearing appear in person, is consistent with the constitutional requirement that victims be treated with dignity and respect.

A victim does not have a statutory right to be heard at a vacatur hearing.  The court, however, has discretion to permit a victim to address the court at a vacatur hearing regarding the impact of the court's decision on the victim and/or the victim's family.

Because the circuit court violated Mr. Lee's right to notice of, and his right to attend, the hearing on the State's motion to vacate, in violation of CP § 8-301.1(d), this Court has the power and obligation to remedy those violations, as long we can do so without violating Mr. Syed's right to be free from double jeopardy. We can do that, and accordingly, we vacate the circuit court's order vacating Mr. Syed's convictions, which results in the reinstatement of the original convictions and sentence. We remand for a new, legally compliant, and transparent hearing on the motion to vacate, where Mr. Lee is given notice of the hearing that is sufficient to allow him to attend in person, evidence supporting the motion to vacate is presented, and the court states its reasons in support of its decision.

Circuit Court for Baltimore City
Case No. 199103042

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1291

September Term, 2022

_____

YOUNG LEE, AS VICTIM'S
REPRESENTATIVE

v.

STATE OF MARYLAND, ET AL.

_____

Wells, C.J.,
Graeff,
Berger,

JJ.

_____

Opinion by Graeff, J.
Berger, J., dissents.
_____

Filed: March 28, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

\*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

This appeal involves convictions dating back to 2000, when a jury in the Circuit Court for Baltimore City convicted Adnan Syed, one of the appellees, for, among other things, the 1999 murder of 17-year-old Hae Min Lee.[1] The court imposed an aggregate sentence of life plus 30 years, and Mr. Syed filed multiple, ultimately unsuccessful, challenges to his convictions in the years that followed.[2]

In September 2022, the State, also an appellee, filed in the Circuit Court for Baltimore City a motion to vacate Mr. Syed's convictions pursuant to Md. Code Ann., Crim. Proc. Art. ("CP") § 8-301.1 (Supp. 2022) (the "vacatur statute"). After a hearing, the court granted the motion and vacated Mr. Syed's convictions.

Young Lee, Hae's brother, appealed to this Court, arguing that the circuit court erred in entering judgment without giving him adequate notice of the vacatur hearing, or a meaningful opportunity to appear and be heard on the merits of the motion to vacate, in violation of the victims' rights provided for in CP §§ 11-101 to 11-619 (2018 Repl. Vol. &

---

[1] We shall refer to Hae Min Lee by her first name because she and appellant, Young Lee, have the same surname. We do so for clarity and intend no familiarity or disrespect. *See Syed v. State*, 236 Md. App. 183, 193 (2018) (referring to the victim by her first name "Hae"), *rev'd*, 463 Md. 60 (2019).

[2] This Court affirmed Mr. Syed's convictions in an unreported opinion in 2003. *See Syed v. State*, No. 923, Sept. Term, 2000 (filed March 19, 2003), *cert. denied*, 376 Md. 52 (2003). In 2010, Mr. Syed filed a petition for post-conviction relief, which the circuit court denied in 2014. *Syed*, 236 Md. App. at 193. Mr. Syed filed an application for leave to appeal, which this Court granted, ordering a limited remand. *Id.* at 194. In 2016, after further proceedings, the circuit court granted the petition and granted Mr. Syed a new trial. *Id.* This Court, in a split decision, held that trial counsel's failure to investigate a potential alibi witness was deficient performance that resulted in prejudice, and therefore, a new trial was warranted. *Id.* at 285–86. The Supreme Court of Maryland reversed. *State v. Syed*, 463 Md. 60, 104–05, *cert. denied*, 140 S. Ct. 562 (2019).

Supp. 2022). He subsequently filed, in the circuit court and this Court, a motion to stay further circuit court proceedings. On October 11, 2022, two days before a response to the motion filed in this Court was due, the State entered a nolle prosequi on all charges against Mr. Syed.[3] On October 12, 2022, in light of the State's action, this Court entered an order denying the motion to stay and ordering Mr. Lee to show cause why this appeal should not be dismissed as moot.

On November 4, 2022, after the parties filed responses, this Court ordered that the appeal would proceed, and we directed the parties to brief the following issues on appeal:

1. Whether the appeal is moot.

2. If the appeal is moot, whether this Court should exercise its discretion to issue an opinion on the merits of Mr. Lee's crime victims' rights claim.

3. Whether the notice that Mr. Lee received in advance of the circuit court's vacatur hearing complied with the applicable constitutional provisions, statutes, and rules.

For the reasons set forth below, we conclude that the case is not moot, and the court did not provide Mr. Lee with the rights to be afforded a victim or victim's representative pursuant to the applicable constitutional provisions and Maryland statutes. Accordingly,

---

[3] As discussed in more detail, *infra*, a nolle prosequi, or "nol pros," is "an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *State v. Huntley*, 411 Md. 288, 291 n.4 (2009) (citing *Ward v. State*, 290 Md. 76, 83 (1981)). *Accord* Md. Code Ann., Crim. Proc. Art. ("CP") § 1-101(k) (2018 Repl. Vol.) (defining "nolle prosequi" as "a formal entry on the record by the State that declares the State's intention not to prosecute a charge").

we shall vacate the judgment of the circuit court and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts and proceedings have been detailed in previous reported opinions. *See State v. Syed*, 463 Md. 60, *cert. denied*, 140 S. Ct. 562 (2019); *Syed v. State*, 236 Md. App. 183 (2018), *rev'd*, 463 Md. 60 (2019). With respect to the initial convictions, we need not set forth a comprehensive discussion of the evidence, but we note the following "substantial direct and circumstantial evidence," *Syed*, 463 Md. at 97, previously set forth regarding Mr. Syed's guilt:

> [Jay] Wilds testified that Mr. Syed had complained of [Hae's] treatment of him and said that he intended "to kill that bitch." Mr. Wilds claimed to have seen the body of [Hae] in the trunk of her car at the Best Buy parking lot.[4] [Jennifer] Pusateri, a friend of Mr. Wilds, told police, and testified at trial consistent with those statements, that Mr. Wilds told her that [Hae] had been strangled. At the time Ms. Pusateri relayed this information to the police, the manner of [Hae's] death had not been publicly released. Mr. Syed's cell phone records showed him receiving a call in the vicinity of Leakin Park at the time that Mr. Wilds claimed he and Mr. Syed were there to bury [Hae's] body. Mr. Wilds directed the police to the location of [Hae's] abandoned vehicle, which law enforcement had been unable to find for weeks. Mr. Syed's palm print was found on the back cover of a map book that was found inside [Hae's] car; the map showing the location of Leakin Park had been removed from the map book. Various witnesses, including Ms. Pusateri, Nisha Tanna, and Kristina Vinson, testified to either seeing or speaking by cell phone with Mr. Wilds and Mr. Syed together at various times throughout the afternoon and evening on January 13, 1999.

---

[4] Mr. Wilds testified that, "while he and Mr. Syed were standing near [Hae's] car in the Best Buy parking lot, Mr. Syed showed [him] [Hae's] body in the trunk and boasted, 'I killed somebody with my bare hands.'" *Syed*, 463 Md. at 89.

*Id.* at 93. "The medical examiner determined that [Hae] had died by strangulation." *Id.* at 96. With respect to Mr. Syed's motive to kill Hae, "the State presented evidence that [Mr. Syed] was jealous and enraged at [Hae's] new romantic relationship with another man." *Id.* at 95–96.

Mr. Syed's own statements regarding his actions on the day Hae disappeared were inconsistent. *Id.* at 90, 93. He told police on the night of her disappearance, January 13, 1999, that he was supposed get a ride home from her, but he got detained at school and assumed she left without him. *Id.* at 90. Two weeks later, on January 25, 1999, he told police that he drove his own car to school and had not arranged to ride with Hae. *Id.* A month later, on February 26, 1999, Mr. Syed said that he could not remember what he did on the day Hae disappeared. *Id.*

## I.

## Motion to Vacate

On September 14, 2022, the State filed a motion to vacate Mr. Syed's convictions pursuant to CP § 8-301.1. The motion alleged that, after a "nearly year-long investigation," the State and the defense "uncovered *Brady*[5] violations and new information, all concerning the possible involvement of two alternative suspects." The motion further alleged that the State and the defense had also identified "significant reliability issues regarding the most critical pieces of evidence at trial." The State noted that investigative efforts were ongoing, and it was not asserting that Mr. Syed was innocent. It stated,

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

however, that it no longer had "confidence in the integrity of the conviction," and therefore, it believed that it was in the interests of justice that the convictions be vacated and that Mr. Syed, "at a minimum, be afforded a new trial." The State advised that, if the motion was granted, the decision to proceed with a new trial or enter a nol pros of the charges was "contingent upon the results of the ongoing investigative efforts."[6]

## A.

### *Brady* Violations and New Information

The motion alleged that the State had developed evidence that suggested the possible involvement of two alternative suspects. Initially, it located a document indicating that a person provided information to the State that one of the suspects had motive to kill Hae, had threatened to kill her in the presence of another individual, and said that "he would make . . . [Hae] disappear. He would kill her." The second document indicated that a different person gave information "that can be viewed as a motive for that same suspect to

---

[6] We note that, despite these statements and the assertion that "the State is not asserting at this time that [Mr. Syed] is innocent," less than one week later, on September 20, 2022, then-Baltimore City State's Attorney Marilyn Mosby stated that she intended to "certify that [Mr. Syed was] innocent," unless his DNA was found on items submitted for forensic testing. *See* Mike Hellgren, *Mosby Says If DNA Does Not Match Adnan Syed, She Will Drop Case Against Him*, CBS News Balt. (Sept. 20, 2022, 11:22 PM), http://www.cbsnews.com/baltimore/news/mosby-says-if-dna-does-not-match-adnan-syed-she-will-drop-case-against-him. Ms. Mosby did not explain why the absence of Mr. Syed's DNA would exonerate him. *See Edwards v. State*, 453 Md. 174, 199 n.15 (2017) (where there was no evidence that the perpetrator came into contact with the tested items, the absence of a defendant's DNA "would not tend to establish that he was not the perpetrator of th[e] crime").

harm the victim."[7]  The State alleged that this information was not in defense counsel's trial file, and it was not included in any of the State's discovery disclosures.  The motion alleged that the failure to disclose this alternative suspect information was material and would have been helpful to the defense.  The motion then noted in a footnote, however, that, "[i]f this information was indeed provided to [the] defense, then minimally, the failure to utilize this evidence would constitute ineffective assistance of trial counsel."

The motion alleged that new evidence had been found during the investigation in 2022, i.e., that the location where Hae's car was found, in a grassy lot behind the 300 block of Edgewood Avenue in Baltimore City, was known to one of the alternative suspects, and that person lived at that location in 1999.  The State alleged that such information was not available to the defense at trial, and "it would have provided persuasive support substantiating the defense that another person was responsible for the victim's death."

The State indicated that it had new information that one of the alternative suspects had been convicted of violent acts, and one of the suspects had improperly been cleared as a suspect by a polygraph test.  The State asserted that, "to protect the integrity of the on-

_____

[7] In its response to Mr. Syed's motion to disqualify the Office of the Attorney General as counsel for the State of Maryland, filed in this Court on October 25, 2022, the State, through the Attorney General's Office, stated that, despite a "nearly year-long" investigation, the State's Attorney never contacted the Attorney General's Office or the person who prosecuted the case and authored the notes that were "subject to multiple interpretations."

going investigation, the names of the suspects, which suspect in particular, and the specific details of the information obtained will not be provided at this time."[8]

## B.

## Reliability of Trial Evidence

The State then alleged that, although the *Brady* violations justified the grant of a new trial, a review of the evidence gave the State additional concerns contributing to its conclusion that it no longer had faith in the integrity of the convictions. It discussed consultations with two expert witnesses who "called the reliability of the State's testimony at trial [regarding the cellphone location evidence] into question." It alleged that new information regarding Ms. Vinson's schedule on January 13, 1999, called into question her testimony that Mr. Wilds and Mr. Syed came to her home on January 13 at approximately 6:00 p.m., and during the visit, Mr. Syed received a call on his cell phone and quickly left.

The State asserted that it could not rely on Mr. Wilds' testimony alone, noting "concerning discrepancies" between Mr. Wilds' various statements, his testimony, the cell phone records, and the State's timeline at trial. Finally, the State alleged that, although it was not making any claims regarding the integrity of the police investigation, it was obligated to note the misconduct of Baltimore Police Detective William Ritz, one of the

---

[8] CP § 8-301.1(b)(2) provides that a motion to vacate must "state in detail the grounds on which the motion is based," but the State's motion did not identify the two alternate suspects or explain why the State believed those suspects committed the murder without Mr. Syed. The note indicating that one of the suspects had motive to kill Hae is not part of the record on appeal, and in the State's October 25, 2022 response, the Office of the Attorney General stated that there is other information in the note that was relevant but not cited in the motion to vacate.

7

homicide detectives who initially investigated Hae's murder and Mr. Syed's involvement in the crime, in another case.

## II.

### Response to Motion to Vacate

That same day, on September 14, 2022, Mr. Syed filed a response to the State's motion to vacate. The response alleged that the *Brady* material described in the State's motion, i.e., that one of the alternate suspects threatened Hae's life and had motive to harm her, was not in the defense trial file and was not reflected in any of the State's discovery disclosures. Mr. Syed was not aware that such information existed, or that the State possessed it in its files, until 2022. He argued that the State's failure to disclose this information violated its discovery obligations under the Maryland Rules, the ethical duties of a prosecutor, and the constitutional requirements of *Brady*. The response also alleged that the recent revelations set forth in the State's motion to vacate "rightfully caused the State to lose faith in the integrity of this conviction." Mr. Syed argued that his convictions should not stand.

## III.

### Chambers Hearing

Two days later, on Friday, September 16, 2022, the court held an off-the-record discussion in chambers regarding the State's motion to vacate.[9] The prosecutor for the Baltimore City State's Attorney's Office ("SAO") stated at the vacatur hearing that she and

---

[9] We do not have a transcript of this discussion, and therefore, we merely summarize the parties' and the court's representations relating to the discussion.

defense counsel met with the court and showed the court the "two documents containing *Brady* information in camera last week." The court in its ruling also referred to its "in camera review of evidence." The record indicates that a date for the vacatur hearing the following Monday, September 19, 2022, also was determined during that meeting.

## IV.

### Notice to Mr. Lee

The prosecutor, Becky Feldman, advised the court at the beginning of the vacatur hearing regarding her communications with Mr. Lee. On Monday, September 12, 2022, she called Mr. Lee, who lived in California, and notified him that the State was going to file the motion to vacate. She told him "that there would be a hearing in this matter," and she asked whether he would like to be notified. Mr. Lee responded: "[A]bsolutely . . . let me know if there's a hearing." Ms. Feldman "did not ask, nor did he state that he would be present physically."

Ms. Feldman called Mr. Lee again the following day, Tuesday, September 13, 2022. She "let him know what was happening" and "what information [they] had developed." She also "went through the motion a bit" with Mr. Lee and emailed a copy of the motion to him that same day. Mr. Lee responded to the email by expressing disagreement with the State's decision to move to vacate the convictions. The motion to vacate was filed the next day, Wednesday, September 14, 2022.

The prosecutor stated at the vacatur hearing that right after the discussion with the court, at approximately 2:00 p.m. on Friday, September 16, 2022, she sent an email to Mr.

9

Lee, advising him that the court had "just scheduled an in-person hearing" for the following Monday, September 19, 2022, at 2:00 p.m. Ms. Feldman advised Mr. Lee:

> It's an in-person hearing, but I asked the court for permission for you and your family to watch the proceedings virtually (if you would like). So, if you would like to watch, the link is below. Please let me know if anybody from your family will be joining the link, so I will make sure the court lets you into the virtual courtroom. . . . Please let me know if you have any questions.

Mr. Lee did not respond to the email.

Because Ms. Feldman did not receive a reply from Mr. Lee, she texted him the day before the hearing, Sunday, September 18, 2022, to ensure that he received the email and was aware of the hearing. Mr. Lee responded to Ms. Feldman's text message that "he was aware and that he would attend via Zoom link."

**V.**

**Motion for Postponement**

On the morning of Monday, September 19, 2022, Mr. Lee filed a motion to postpone the hearing on the State's motion to vacate. In support, Mr. Lee argued that permitting the hearing to occur as scheduled would violate the crime victims' rights of the Lee family "in three critical respects": (1) the SAO failed to reasonably inform Mr. Lee of the State's motion to vacate and the hearing on the motion; (2) Mr. Lee would be denied the right to be present and heard at the proceeding if the hearing moved forward as planned; and (3) Mr. Lee could not meaningfully participate in the hearing because the State's Attorney failed to inform him of the facts supporting the motion to vacate.

Mr. Lee alleged that, although the State's Attorney investigated the case for more than one year, "her office waited until the Friday before the motions hearing to notify the

10

family of the Monday, 2:00 p.m. hearing." He alleged that the State's Attorney was "fully aware" that he lived in Los Angeles and "would almost certainly be unable to fly to Baltimore on half a business day's notice." Although Ms. Feldman previously had informed him by email that he and his family could "watch the proceedings virtually," the Lee family wanted to be physically present at the in-person hearing, and the "notice provided was patently insufficient to permit that to happen." Additionally, Ms. Feldman's email did "not even mention [the Lee family's] right to speak at the hearing, suggesting they [had] none, though they plainly do under Maryland law."

Mr. Lee further alleged that, even if the Lee family could attend the hearing in person, they "could not meaningfully participate and be heard" because the motion to vacate "presents no factual basis for vacating the sentence," and the State's Attorney's Office had not "disclosed the factual basis to the family through other means." In this regard, the motion to vacate did not name any alternate suspects, and it failed to support "an inference that one or more alternative suspects exists." The motion instead "alludes to an 'ongoing' investigation and rehashes arguments that the Court of Appeals rejected when it affirmed Mr. Syed's conviction in 2019." [10] Accordingly, Mr. Lee requested that the court postpone the hearing on the motion to vacate by seven days and direct the SAO to pay for Mr. Lee's travel to Baltimore using unspent victim relocation funds.

---

[10] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

11

# VI.

## Vacatur Hearing

Later that day, the court held a hearing on the State's motion to vacate. Ms. Feldman appeared for the State. Defense counsel, Erica Suter, and counsel for Mr. Lee, Steven Kelley, also appeared at the hearing.

## A.

### Argument on the Motion to Postpone

The court heard argument from counsel for Mr. Lee regarding the motion to postpone. He noted that he was "not prepared to address" and did not "want to address the merits" of the motion to vacate. Instead, he was present "strictly as a matter of victim's rights" and "[s]trictly on the issue of the right of th[e] [Lee] family to meaningfully participate."

Counsel argued that, pursuant to CP § 11-102, a crime victim or victim's representative (hereafter sometimes referred to collectively as "victim") has the same right to be present at proceedings as the defendant. In this case, "giving a late afternoon notice to a family of Korean national immigrants on a Friday afternoon for a motion that has been contemplated for one year, according to the State's filings," was "patently unreasonable" and afforded no opportunity for Mr. Lee to be present. Counsel also argued that it was unreasonable for the State to fail "to give any kind of notice as to what it is that has caused the concern on the part of the [SAO]." Counsel disagreed with the State's position that "the victim of a crime in Maryland has no right to meaningful[ly] participate in this proceeding." He asserted that, under the relevant constitutional provisions, statutes, and

12

rules, a crime victim or victim's representative has "a meaningful opportunity to participate." Recognizing "there are real liberty issues at stake for Mr. Syed," counsel requested that the court grant a postponement of the vacatur hearing for "a very reasonable amount of time, seven days" for Mr. Lee to attend the hearing in person "and to meaningfully participate."

Before ruling on the motion to postpone, the court asked Mr. Lee's counsel: "What is attendance, what is presence?" The court noted in this regard that, since the beginning of the COVID-19 pandemic in 2020,

> we have been conducting [c]ourt in a lot of jurisdictions around the country via Zoom.
>
> So as far as the Maryland [R]ules [are] concerned, 4-231(e), electronic proceedings are allowed in the [c]ircuit [c]ourt for any [c]ircuit [c]ourt. And we do them here every day.[11]
>
> So if Mr. Lee, as he informed Ms. Feldman, intended to attend the hearing today, his presence would be known here today on the Zoom.

The court stated that, based on its review of the statutes and rules, there was nothing, with respect to the motion to vacate, that "indicates that the victim's family would have a right to be heard." The court stated, however, that, "of course, if Mr. Lee was present today on the Zoom and he wanted to speak, [it] would allow him to speak." In this regard, the court asked Mr. Lee's counsel:

> Are you not aware that . . . by him telling us on Friday that he was going to appear via Zoom is why we set this hearing today? Because had we known that on Friday then, of course, we would have scheduled this hearing

---

[11] Rule 4-231(e) provides that a circuit court may conduct an initial appearance of the defendant or a review of the District Court's release determination in specified circumstances.

according to when he was planning to arrive within a reasonable amount of time. So he didn't do that.

The court stated that "counsel and I have been in close communication about this case procedurally since Friday."

Mr. Lee's counsel disagreed with the court's statement that, on the previous Friday, Mr. Lee advised that he would appear by Zoom, asserting that Mr. Lee "did not state . . . at any time" on Friday, September 16, 2022, "that he would participate." Ms. Feldman then confirmed that the text message from Mr. Lee stating that he would participate by Zoom was on Sunday, September 18, 2022, at 4:08 p.m. The court advised that, "had [Mr. Lee] told Ms. Feldman that he didn't want to participate via Zoom and wanted to be in person, she would have communicated that to [the court] and then we would have taken the appropriate steps."

In response, counsel for Mr. Lee argued "that's not adequate notice under Maryland law." He stated that Mr. Lee is "a layman" who "didn't know any better," and he "was trying to get counsel" after being "told by the State's Attorney's Office that he didn't have the right to meaningful[ly] participate in this hearing." The court responded that CP § 8-301.1 said "notice," but it did not say "reasonable notice." Mr. Lee's counsel stated "that reasonableness is a standard that's been long applied," and under that standard, one day's notice was not adequate. He expressed his belief that there was not "any appellate court that would find this notice reasonable."[12]

---

[12] Counsel for Mr. Lee then requested that, if the court denied the motion to postpone, the case "be stayed pending appellate review." The court did not explicitly rule

The State argued that CP § 8-301.1 "just requires notice and attendance." Ms. Feldman clarified, however, that it was not the position of the SAO to "object in any way to someone being present and participating if they wanted to." She noted that, although "this is an in-person hearing," she "asked [for] this to be by Zoom" and established with the court "this arrangement in case [Mr. Lee] would like . . . to observe the hearing." She also noted that, as soon as she returned to her office on Friday, September 16, 2022, she emailed Mr. Lee, "knowing what the new date was," and she "would never tell a victim ever that they did not have the right to attend or make a statement."

The court denied the motion to postpone. At the request of counsel for Mr. Lee, the court declared a 30-minute recess so that Mr. Lee could leave work and "get home" to join the hearing in a private place where he could participate.

**B.**

**Mr. Lee's Statement**

The court reconvened at 3:35 p.m., and Mr. Lee joined the vacatur hearing remotely via Zoom. The following then ensued:

> THE COURT: You're here today to make a statement and the [c]ourt is ready to hear from you.
>
> MR. LEE: Thank you, Your Honor. Thank you for giving this time to speak.
>
> I'm sorry if I – sorry, my heart is kind of pounding right now.

___

on the request at the vacatur hearing, but it implicitly denied the request by proceeding with the hearing. *See Frase v. Barnhart*, 379 Md. 100, 116 (2003) ("'[W]hile it is certainly the better practice to specifically rule on all pending motions, the determination of a motion need not always be expressed but may be implied by an entry of an order inconsistent with the granting of the relief sought.'") (quoting *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir.1966)).

15

THE COURT: That's fine.

MR. LEE: I apologize. There was some issues with Zoom. I personally wanted to be there in person, but Your Honor, it's – I've been living with this for 20 plus years and every day when I think it's over, when I look and think it's over or it's ended, it's over. It always comes back. And it's not just me, killing me and killing my mother and it's really tough to just going through this again and again and again. I believe in the justice system, the [c]ourt, the State, and I believe they did a fine job of prosecuting Mr. Syed. And I believe the [j]udge did make the right decision, but just going through it again it's living a nightmare over and over again. It's tough.

And I am not – like I said before, I trust the court system and just trust in the justice system and I am not against – it's really – it was kind of – I was kind of blind [sided]. I always thought the State was on my side, you know, but I don't know where – I hear that there's a motion to vacate judgment and I thought honestly I felt honestly betrayed, why is my – I kept thinking to myself, why is the State doing this.

And I am not against an investigation or anything of that sort that Ms. Feldman is doing. I am not against it at all. It just – but the motion just to vacate judgment, it just – it's really tough for me to swallow, especially from – I am not an expert in legal matters, in law or anything like that, but I ask you . . . just to make a right decision that you see. But just this motion, I feel that it's unfair, especially for my family just to live through it all and knowing that there's somebody out there just free of killing my sister. It's tough.

And I just wanted to say this in person, but I didn't know I had the opportunity, but I just – and it's tough. Yeah. It's tough, it's tough. This is not a [indiscernible] for me, it's just real life, never ending after 20 plus years.[13] Just on the thought that [indiscernible]. I just want the judge to know like the stuff that we're going through, our family, it's killing us. And I ask . . . that you make the right decision. That's all, Your Honor.

THE COURT: All right. Thank you, Mr. Lee.

---

[13] Subsequent media reports indicated that Mr. Lee said: "This isn't a podcast for me, it's real life." *See, e.g.*, Aya Elamroussi & Sonia Moghe, *The Family of Hae Min Lee Requests Maryland Court to Halt Legal Proceedings in Adnan Syed's Case*, CNN (Oct. 6, 2022, 9:00 AM), http://www.cnn.com/2022/10/06/us/adnan-syed-hae-min-lee-serial-case-family-motion/index.html.

The court noted "how difficult" and "very emotional" the day was for Mr. Lee and his family. It stated to Mr. Lee: "I appreciate you joining the Zoom this afternoon to make this statement because it is important to hear from the victim or the victim's representative. And I thank you for doing that this afternoon, sir." Mr. Lee responded to the court: "You're welcome, Your Honor. Thank you for hearing me."

Counsel for Mr. Lee requested the court's permission to "just say a couple of sentences" following Mr. Lee's statement, but the court denied counsel's request and did not allow counsel to present any further argument. The court then found that the State had met the notice requirement set forth in CP § 8-301.1, and it stated that the hearing would commence at that time.

## C.

## Hearing on the Motion to Vacate

Ms. Feldman argued that the State was "proceeding under the second standard" set forth in CP § 8-301.1, i.e., that the SAO received new information after the judgment of conviction that called into question the integrity of the conviction and the interest of justice and fairness justified vacating the conviction. She acknowledged that the procedural posture of the motion to vacate was "unusual" because the State's Attorney's Office would be continuing its investigation even if the motion to vacate is granted. She stated: "[The State] will not be asking the [c]ourt to dismiss the case at this time. Instead, we are requesting that a trial be set in."

17

The SAO began its reinvestigation in October 2021. The initial review generated "some concerns," and in March 2022, the SAO requested, and the circuit court approved, touch DNA testing of Hae's clothing. Such testing had not previously been performed.

In June 2022, Ms. Feldman discovered documentary "*Brady* material" in the State's trial file, which she immediately disclosed to Mr. Syed's counsel. She stated that the additional information indicated that there was at least one individual, other than Mr. Syed, who "was a credible alternative suspect with a motive." The State did not move to vacate Mr. Syed's convictions at that time because it was waiting for the results of the touch DNA testing. It then conducted a "lengthy" investigation of the alternate suspects.

Ms. Feldman marked her signed affidavit, dated September 19, 2022, as State's Exhibit No. 1. She proceeded to "read a few of the most relevant portions" of her affidavit on the record. In the affidavit, Ms. Feldman discussed the discovery of the *Brady* material in the State's trial file, as follows:

> • Ms. Feldman started working for the SAO in December 2020, when she became Chief of its Sentencing Review Unit.
>
> • Ms. Suter approached the SAO regarding her client, Mr. Syed, and the possibility of pursuing on his behalf a motion under Maryland's Juvenile Restoration Act.[14]
>
> • On October 2, 2021, Ms. Suter transferred case and mitigation-related materials to Ms. Feldman, who "began reviewing the case soon thereafter."

---

[14] The Juvenile Restoration Act, 2021 Md. Laws ch. 61 (codified at CP §§ 6-235, 8-110), which went into effect on October 1, 2021, allows individuals convicted as juveniles (i.e., individuals under the age of 18), who have served at least 20 years in prison, to file a motion with the court to request a reduction of their sentence. *See* CP § 8-110 (a), (b). The State's Attorney's Office's Sentencing Review Unit "reviews and responds to all Juvenile Restoration Act motions filed in Baltimore City."

• Approximately seven months later, on May 12, 2022, Ms. Feldman contacted the Office of the Attorney General, requesting the State's trial file and in particular "any reports regarding the investigation," "cell phone reports & records," and "witness interviews."

• Ms. Feldman does not know how and where the State's trial file was maintained between 1999 and the time when it was delivered to the Attorney General's Office.

• Ms. Feldman does not know when the State's trial file was delivered to the Attorney General's Office.

• On June 22, 2022, Ms. Feldman accessed the record at the Attorney General's Office and "was able to go through several of the boxes and photocopied various documents."  When she scanned the documents and sent them to Ms. Suter later that same day, Ms. Feldman discovered "that 2 of the documents [she] scanned contained potential *Brady* material."

• The two documents "were handwritten by either a prosecutor or someone acting on their behalf."  They were "detailed notes of two separate interviews of two different people contacting the [SAO] with information about one of the suspects."

• One of the interviews occurred in January 2000, approximately one month before Mr. Syed was convicted of Hae's murder.  The information relayed to the SAO was that one of the suspects was "upset" with Hae and "he would make her . . . disappear.  He would kill her."  The other interview, which occurred in October 1999, was with a different person, who relayed "a motive for that same suspect to harm the victim."  Both documents were difficult to read because the handwriting was poor.  The handwriting was consistent with that in other handwritten documents in the State's trial file.

• Based on the information from those interviews, Ms. Suter and Ms. Feldman "conducted a fairly extensive investigation."  Based on the investigation, the State believed "that this suspect had motive, opportunity, and means to commit this crime."  That investigation "remain[ed] ongoing" at the time.

• The two documents that Ms. Feldman discovered were not in the defense attorney's trial file, "nor were there any notes that resembled, in any way, the information that was contained in the State's notes."  The information "also was not contained in any of the disclosures made by the State during the

19

trial." Ms. Feldman and Ms. Suter "were both shocked to see these documents."

• Due to "the concerning nature of the *Brady* material," Ms. Feldman "re-reviewed all of the boxes" over the course of two days, on July 29 and August 11, 2022, at the Attorney General's Office. She did not locate any other "potential *Brady* information."

• Ms. Feldman had no personal knowledge regarding what parts of the file were made available to other attorneys.

The court subsequently admitted Ms. Feldman's affidavit into evidence as State's Exhibit No. 1.

Ms. Feldman stated that there were "an abundance of issues" that generated "overwhelming cause to question the reliability of [Mr. Syed's] conviction." She stated that there was "new evidence" regarding the location of Hae's car, and one of the alternative suspects "was not properly cleared as a suspect based on the incorrect use of a polygraph examination." Ms. Feldman asserted that the "cell site evidence," i.e., the "cell site records" of incoming calls to Mr. Syed's cell phone on the date of Hae's murder, which was "a critical piece of information at trial," was unreliable. Another consideration regarding the reliability of the investigation conducted in this case was "past misconduct" of Detective Ritz in a prior case "that resulted in an innocent man serving 18 years in prison."

Ms. Feldman expressed concern regarding "the reliability of Jay Wilds," noting that he gave different versions of events in different statements. She stated that it was "extremely difficult . . . to rely on his testimony alone without sufficient corroboration."

20

She then discussed concerns with the corroborating testimony of Ms. Vinson and Ms. Pusateri.

Based on these issues, the State questioned the reliability of Mr. Syed's convictions. Ms. Feldman noted that "[t]he State's duty, in this case, was to ensure [that] the person or persons responsible for [Hae's] death were brought to justice. The State's defective investigation of [her] murder failed to properly rule out at least two suspects who had motive and opportunity to kill [Hae]." She asserted that the "faulty investigation" of Hae's murder developed evidence against Mr. Syed that was "not reliable," and the motion to vacate "acknowledges [that] justice has been denied to [Hae] and her family by not ensuring [that] the correct assailant was brought to justice." Ms. Feldman then stated in conclusion, as follows:

> I understand how difficult this is but we need to make sure we hold the correct person accountable. Our solemn duty, as prosecutors, is to seek justice over convictions. The [SAO] believes that we are morally and ethically compelled, at this moment, to take affirmative action to rectify the justice that was denied to Mr. Syed.
>
> The State has lost confidence in the integrity of his convictions and believes that it is in the interest of justice and fairness that his convictions be vacated.
>
> It is our promise that we will do everything we can to bring justice to the Lee family. This means continuing to utilize all available resources to bring a suspect or suspects to justice and hold them accountable.

Ms. Suter then addressed the court. After expressing sympathy to Mr. Lee and his family, she stated that Mr. Syed was innocent.

The only evidence admitted at the hearing was Ms. Feldman's affidavit and a letter written by Mr. Syed's original defense counsel, M. Cristina Gutierrez, dated January 6,

21

2000. This letter requested *Brady* material from the State, stating that, "[d]espite [Mr. Syed's] multiple requests for disclosure of such material, exculpatory or mitigating information within the State's possession continues to come to light as this case proceeds."

Ms. Suter proffered that the documents that the State referred to as *Brady* material "were not in the defense file." She further proffered "that previous post-conviction counsel in this case would also state to the best of his knowledge and recollection, he has never seen these documents." She asked that Mr. Syed's convictions be vacated.

## D.

## Circuit Court's Ruling on the Motion to Vacate

The court then issued its oral ruling from the bench, finding that, "[u]pon consideration of the papers, in camera review of evidence, proceedings and oral arguments of counsel made upon the record," the State had "proven grounds for vacating the judgment of conviction in the matter of Adnan Syed." The court found that the State had "proven that there was a *Brady* violation." It also found that the State had "discovered new evidence that could not have been discovered by due diligence in time for new trial under Maryland Rule 4-331(c)," and such information "create[d] a substantial and significant probability that the result would have been different."[15]

---

[15] We note that, although CP § 8-301.1(f)(2) requires the court to "state the reasons for" its ruling, the court did not explain its reasons for finding a *Brady* violation. *See State v. Grafton*, 255 Md. App. 128, 144 (2022) (*Brady* violation requires proof that: (1) the prosecutor suppressed or withheld evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material). It did not explain how, or if, it found that the evidence was suppressed, despite the lack of affirmative evidence that the information had not been disclosed, and the statement in the motion to vacate that, "[i]f this information was indeed

The court stated that, "in the interests of justice and fairness," it would grant the State's motion to vacate Mr. Syed's convictions for first-degree murder, kidnapping, robbery, and false imprisonment. It ordered that Mr. Syed be released on his own recognizance, subject to home detention with GPS monitoring. It further ordered, consistent with Maryland Rule 4-333(i), that the State "schedule a date for a new trial or enter a [nol] pros of the vacated counts within 30 days of the date of this order."[16]

The court then instructed security to "remove the shackles from Mr. Syed." The court stated its understanding that "the State and all counsel will hold a press conference outside the courthouse this afternoon," and it excused the press from the courtroom and directed those who were not members of the press to remain seated. A person in the courtroom applied an ankle monitor to Mr. Syed and stated that the necessary paperwork would be submitted later. The court then told Mr. Syed that he was free to leave and told "the people on the phone" that the hearing had concluded. That same day, the court issued a written order memorializing its ruling.

---

provided to defense," the failure to utilize it would be ineffective assistance of counsel. The court also did not explain how the notes met the *Brady* materiality standard. Additionally, the court found that the State discovered new evidence that created a substantial likelihood of a different result, but it did not identify what evidence was newly discovered or why it created the possibility of a different result.

[16] Maryland Rule 4-333(i) provides, in part: "Within 30 days after the court enters an order vacating a judgment of conviction . . . as to any count, the State's Attorney shall either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count."

**E.**

**Subsequent Appeal and Entry of a Nolle Prosequi**

On September 28, 2022, Mr. Lee filed a notice of appeal, pursuant to CP § 11-103(b), regarding the court's September 19, 2022 order.[17] The next day, September 29, 2022, Mr. Lee filed in the circuit court a motion to stay the proceedings pending appeal, asking the court to rule on the motion by the close of business that day. On Wednesday, October 5, 2022, after no ruling had been issued in the circuit court, Mr. Lee filed in this Court a motion to stay the circuit court proceedings pending appeal. He argued that all proceedings in the circuit court should be stayed pending the resolution of this appeal in order "[t]o preserve this Court's appellate jurisdiction and to avoid irreparable prejudice to Mr. Lee's right to appeal." On Thursday, October 6, 2022, Mr. Syed filed in this Court a notice of intent to respond to the motion to stay.

At 8:55 a.m. on October 11, 2022, prior to the time a response to the motion to stay was due, *see* Md. Rule 8-431(b) (response to motion shall be filed within five days after service of the motion), and eight days before the 30-day deadline to enter a nolle prosequi or take other appropriate action under Rule 4-333(i), the State appeared in court and

---

[17] The right to appeal generally is limited to a party. *See* Md. Code Ann., Cts. & Jud. Proc. Art. § 12-301 (2020 Repl. Vol.) ("a party may appeal from a final judgment entered in a civil or criminal case by a circuit court"). CP § 11-103(b), however, provides: "Although not a party to a criminal or juvenile proceeding, a victim of a crime for which the defendant or child respondent is charged may . . . appeal to the [Appellate Court of Maryland] from a final order that denies or fails to consider a right secured to the victim by [various statutes]." *Accord* Md. Rule 8-111(c) ("a victim of a crime" is "not a party to a criminal or juvenile proceeding"). It is undisputed here that Mr. Lee had a right to appeal the court's September 19, 2022 order on the basis that, in granting the State's motion to vacate, the court denied or failed to consider "a right secured to the victim."

24

indicated that it would be entering a nol pros of Mr. Syed's vacated charges. The court stated that the nol pros was "entered."

On October 12, 2022, this Court, in response to the State's action, denied the motion to stay and ordered Mr. Lee to "show cause in writing, within 15 days from the date of this Order, why this appeal should not be dismissed as moot in light of the *nolle prosequi* filed" the previous day.[18] The parties filed additional written submissions. On November 4, 2022, this Court issued an order that "the provision of this Court's October 12 Order directing the appellant to show cause is deemed satisfied. This appeal shall proceed."[19]

## DISCUSSION

In his briefs filed in this Court, Mr. Lee lists multiple concerns about the vacatur proceedings. Initially, he contends that the State and the circuit court violated his rights to "reasonable notice, to appear, and to be heard." He further asserts that the court held "an improper, clandestine, *in camera* prehearing," which neither he nor the public knew occurred. He argues that the on-the-record vacatur hearing was a "farce," where no evidence was produced and there was "a predetermined outcome decided in the closed-chambers prehearing." Mr. Lee challenges the validity of the State's assertion that there was a *Brady* violation, and he asserts that the court did not properly issue findings

---

[18] That same day, the circuit court denied Mr. Lee's motion to stay the proceedings pending appeal on the ground that the State's nol pros rendered the motion moot.

[19] This Order also denied Mr. Syed's motion to strike the State, represented by the Attorney General's Office, as a party to the appeal.

explaining how there was such a violation. Mr. Lee argues that "the circuit court conducted neither a full nor transparent review of long-since discounted evidence."

We share many of Mr. Lee's concerns about how the proceedings were conducted. The scope of our review in this appeal, however, is limited to whether the court denied Mr. Lee rights to which he was entitled as the victim's representative. Thus, as indicated in our Order that the appeal should proceed, the issues before us are: (1) whether the appeal is moot; (2) if moot, whether we nevertheless should address the merits of the appeal; and (3) did Mr. Lee receive the rights to which he was entitled as a victim's representative.

Mr. Lee contends that this appeal is not moot and that the court violated his constitutional and statutory rights to reasonable notice, to appear, and to be heard. He asserts that the court "erred by endorsing inadequate notice, relying on secret evidence, and entertaining only perfunctory input from Mr. Lee after it had predetermined its holding." Before we address those issues, we set forth a brief discussion of victims' rights and the vacatur statute and corresponding rule.

## I.

## Victims' Rights

This Court recently noted the "clear public policy" in Maryland "to provide broad rights to crime victims in [the] trial and appellate courts." *Antoine v. State*, 245 Md. App. 521, 539 (2020) (quoting *Lopez v. State*, 458 Md. 164, 175 (2018)). In 1994, the voters of Maryland ratified Article 47 of the Declaration of Rights, which provides:

> (a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

26

(b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

(c) Nothing in this Article permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of crime to take any action to stay a criminal justice proceeding.

Md. Const., Decl. of Rts., art. 47. Article 47 "represents 'the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and in certain cases, that they should be heard.'" *Hoile v. State*, 404 Md. 591, 605 (2008) (quoting *Lopez–Sanchez v. State*, 388 Md. 214, 229 (2005)), *superseded by statute on other grounds*, 2013 Md. Laws ch. 363, § 1 (codified at CP § 11-103), *as recognized in Antoine*, 245 Md. App. at 541–42.

The General Assembly has passed a number of statutes to implement those rights. For example, CP § 11-1002(b)(1) and (3) set forth guidelines for the treatment of a crime victim or victim's representative, including that they "should be treated with dignity, respect, courtesy, and sensitivity," and that they "should be notified in advance of dates and times of trial court proceedings in the case and . . . of postsentencing proceedings."

We will discuss other statutes, as applicable, *infra*.

## II.

## Vacatur of Convictions

The General Assembly has provided for various rights for victims depending on the proceeding involved. This appeal involves victims' rights in the context of a proceeding

27

pursuant to CP § 8-301.1, which became effective on October 1, 2019. *See* 2019 Md. Laws ch. 702.

CP § 8-301.1 provides that a court may vacate a conviction on a State's motion to vacate a judgment of conviction (or a probation before judgment) on either of two grounds: (1) there is "newly discovered evidence" that "could not have been discovered by due diligence in time to move for a new trial under Maryland Rule 4-331(c)," which "creates a substantial or significant probability that the result would have been different"; or (2) after the entry of the conviction or probation before judgment, the prosecutor "received new information" that "calls into question the integrity of the probation before judgment or conviction." CP § 8-301.1(a)(1)(i)–(ii). The State here advised the court that it was proceeding under the second prong.

If the State meets its burden of proof to show either of these grounds, *see* CP § 8-301.1(g), the court must find that "the interest of justice and fairness justifies vacating the probation before judgment or conviction." CP § 8-301.1(a)(2). The court shall hold a hearing if the motion filed satisfies the requirements of the statute, unless "the court finds that the motion fails to assert grounds on which relief may be granted." CP § 8-301.1(e).[20]

With respect to the notice required to be given to the victim regarding such a hearing, and the victim's right to attend, CP § 8-301.1(d) provides, as follows:

---

[20] CP § 8-301.1(b) provides that a motion to vacate shall: "(1) be in writing; (2) state in detail the grounds on which the motion is based; (3) where applicable, describe the newly discovered evidence; and (4) contain or be accompanied by a request for a hearing."

(d)(1) Before a hearing on a motion filed under this section, the victim or victim's representative shall be notified, as provided under § 11-104 or § 11-503 of this article.

(2) A victim or victim's representative has the right to attend a hearing on a motion filed under this section, as provided under § 11-102 of this article.

In ruling on a motion, the court may "vacate the conviction or probation before judgment and discharge the defendant" or deny the motion. CP § 8-301.1(f)(1)(i). The court shall "state the reasons for a ruling . . . on the record." CP § 8-301.1(f)(2).[21]

Maryland Rule 4-333, effective January 1, 2020, implements CP § 8-301.1 and provides further requirements when there is a motion to vacate a conviction. With respect to notice to the victim, Rule 4-333(g)(2) provides:

> Pursuant to Code, Criminal Procedure Article, § 8-301.1(d), the State's Attorney shall send written notice of the hearing to each victim or victim's representative, in accordance with Code, Criminal Procedure Article, § 11-104 or § 11-503. The notice shall contain a brief description of the proceeding and inform the victim or victim's representative of the date, time, and location of the hearing and the right to attend the hearing.

Rule 4-333(h) addresses the conduct of the hearing. Rule 4-333(h)(1) provides that, if the victim or victim's representative entitled to notice is not present at the hearing, "the

---

[21] The legislative history of CP § 8-301.1 indicates that the statute was enacted, at least in part, in response to criminal activity by members of the Baltimore Police Department's Gun Trace Task Force, which potentially affected many convictions in Baltimore City. *See* Md. Gen. Assemb. S. Jud. Proc. Comm., Floor Report, H.B. 874, 2019 Leg., 439th Sess., at 4–5 (2019). The legislative history also reflects an intent to allow the State to move to vacate crimes based on acts that are no longer a crime, such as use or possession of less than 10 grams of marijuana. *See* H.B. 874, Committee Recommendation. This history suggests that the statute was intended to be used when there was no dispute that the convictions should be reversed, although its ultimate language does not include any such limitation.

State's Attorney shall state on the record the efforts made to contact that person and provide notice of the hearing." Rule 4-333(h)(3) provides that, after a hearing, "[t]he court shall state its reasons for the ruling on the record." As the parties note, following subsection (h) of Rule 4-333, the following cross-reference appears: "For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see Code, Criminal Procedure Article, § 11-403."[22]

Rule 4-333(i) adds an additional requirement in a vacatur proceeding. It provides that, if the court enters an order vacating a judgment of conviction pursuant to CP § 8-301.1, the State's Attorney, within 30 days of the entry of the order, "shall either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count."

## III.

### Mootness

Before we address Mr. Lee's contention that his rights as a victim's representative were violated, we must address whether his appeal is properly before us. Mr. Syed contends that it is not, asserting that the State's entry of a nol pros after Mr. Lee filed his appeal rendered the appeal moot, and therefore, we should dismiss the appeal.

"Generally, a case is moot if no controversy exists between the parties or 'when the court can no longer fashion an effective remedy.'" *D.L. v. Sheppard Pratt Health Sys.,*

---

[22] CP § 11-403(b) provides that, in a sentencing or disposition hearing, which includes the alteration of a sentence, "the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition." In CP § 11-403(a), "disposition" is referred to in connection with a "juvenile court proceeding."

*Inc.*, 465 Md. 339, 351–52 (2019) (quoting *In re Kaela C.*, 394 Md. 432, 452 (2006)). "It is well settled that '[a]ppellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course.'" *Cottman v. State*, 395 Md. 729, 744 (2006) (quoting *State v. Ficker*, 266 Md. 500, 506–07 (1972)). "The test of mootness is whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy." *Adkins v. State*, 324 Md. 641, 646 (1991). "In other words, 'mootness prevents review of an issue only when the court can no longer fashion an effective remedy.'" *Tallant v. State*, 254 Md. App. 665, 682–83 (2022) (quoting *Hawkes v. State*, 433 Md. 105, 130 (2013)) (cleaned up). *Accord Md. Tobacco Growers' Ass'n v. Md. Tobacco Auth.*, 267 Md. 20, 25–26 (1972) ("[W]hen the chronology of a case makes it apparent that nothing [the court] could do could undo or remedy that which has already occurred," then "the case must be dismissed as moot.").

Mr. Lee contends that the State's entry of a nol pros did not make this appeal moot. He asserts that this Court can provide him with "an effective, tangible form of relief," namely, "a redo of the vacatur hearing with the proper procedures and safeguards." He argues that the entry of the nolle prosequi did "not moot the right to a compliant hearing because the State had no authority to [nol pros] but for the deficient vacatur hearing," and "once this Court took jurisdiction of this appeal, any actions that would interfere with appellate adjudication were invalid."

31

The State similarly contends that this appeal is not moot. It argues that a valid vacatur hearing was a prerequisite to the ability to enter a nolle prosequi, and because it was entered "in the wake of the defective vacatur hearing," the nol pros was a legal nullity.

Mr. Syed contends that this appeal is moot "[b]ecause the underlying case was ended by the entry of a nolle prosequi subsequent to the filing of the notice of appeal," and "following the State's dismissal of the charges against [him]," this Court can provide Mr. Lee with "no effective relief." He argues that "[i]t is uncontroverted that the State acted lawfully in entering the nolle prosequi," and because Mr. Lee cannot challenge that action on appeal, the dismissal of the charges is not subject to appellate review.

It is this latter contention that is critical to the mootness issue, i.e., whether the State "acted lawfully in entering the nolle prosequi." To assess whether the entry of the nol pros here rendered this appeal moot, we consider the nature and effect of a nol pros, both generally and in this case.

A nolle prosequi is "an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *State v. Huntley*, 411 Md. 288, 291 n.4 (2009) (citing *Ward v. State*, 290 Md. 76, 83 (1981)). *Accord* CP § 1-101(k) (defining "nolle prosequi" as "a formal entry on the record by the State that declares the State's intention not to prosecute a charge"). Maryland Rule 4-247(a) provides that "[t]he State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court."

The entry of a nolle prosequi eliminates the charge, leaving the defendant in the position he would have been in if he had never been charged and convicted. *See Blackston*

32

*v. State*, 93 Md. App. 567, 570 (1992) (When the State entered a nolle prosequi of charges, "it was as if the charges had never existed."), *cert. denied*, 329 Md. 336 (1993). *Accord Curley v. State*, 299 Md. 449, 460 (1984) ("Normally the effect of a nol pros is as if the charge had never been brought in the first place."). Upon entry of a nol pros, "the matter is 'terminated' at that time; and the accused may be proceeded against for the same offense only under a new or different charging document or count." *State v. Moulden*, 292 Md. 666, 673 (1982) (quoting *Barrett v. State*, 155 Md. 636, 637–38 (1928)). *Accord In re Darren M.*, 358 Md. 104, 112 (2000) (nol pros "is not an acquittal or pardon from the underlying conduct that served as the basis of the original charges").[23]

As indicated, Mr. Syed contends that, based on the entry of a nol pros on October 11, 2022, the case was ended, there is nothing for this Court to review, and this case is moot. Under typical circumstances, Mr. Syed would be correct, and the State's entry of a nol pros of the charges would end the case against the defendant and render an appeal of prior court proceedings on those charges moot. *See Mitchell v. State*, 369 P.3d 299, 307 (Idaho 2016) (when charges were dismissed, the appeal by the victim asserting that his rights were violated was moot); *S.K. v. State*, 881 So. 2d 1209, 1212 n.6 (Fla. Dist. Ct. App. 2004) (when nol pros was entered, appeal by victim's representatives alleging that their rights were violated was moot).

---

[23] If the nol pros is entered after trial has begun, however, jeopardy attaches, and a subsequent prosecution on the same offense would violate principles of double jeopardy. *See Ward*, 290 Md. at 97. *Accord Boone v. State*, 3 Md. App. 11, 25–26 ("If entered without the consent of the defendant after trial has begun, jeopardy attaches because it operates as an acquittal."), *cert. denied*, 393 U.S. 872 (1968).

In this case, however, Mr. Lee contends that the nol pros was invalid and a nullity, and therefore, it did not render his appeal moot. For the reasons set forth below, we agree that, under the unique circumstances of this case, the nol pros was void, and therefore, it was a nullity.

As a general rule, the State's Attorney has broad discretion, free from judicial control, to enter a nolle prosequi. *State v. Simms*, 456 Md. 551, 561 (2017); *Ward*, 290 Md. at 83. This authority, however, is not unfettered. The Supreme Court of Maryland has made clear that there are exceptions and boundaries to the State's discretion. *Simms*, 456 Md. at 562. *Accord Hook v. State*, 315 Md. 25, 35–36 (1989) (The State's power to nol pros charges is "not absolute" or "without restraint."); *Ward*, 290 Md. at 83 n.6 ("There is authority . . . suggesting that the court may or may not permit the entry of the nolle prosequi in order to prevent injustice.").

The Supreme Court, in several circumstances, has limited the State's power to enter a nol pros to prevent injustice. In *Curley*, 299 Md. at 462, the Supreme Court held that, where the State enters a nol pros that has the purpose or necessary effect of circumventing the defendant's right to a trial within the 180-day time limit ("the *Hicks* rule"),[24] that nol pros is treated as a nullity for purposes of the *Hicks* rule, and if the State files new charges, the 180-day period for trial is calculated based upon the initial prosecution, rather than beginning with the second prosecution. *Accord Huntley*, 411 Md. at 293 (when circumvention of the *Hicks* rule is "(1) the purpose of the State's nol pros, or (2) the

---

[24] *State v. Hicks*, 285 Md. 310 (1979).

necessary effect of its entry," the 180-day period for trial "begins with the triggering event under the initial prosecution").

Another limit to the State's authority to enter a nol pros is in the situation where "entry of a nol pros undermines a fair trial." *Simms*, 456 Md. at 562. The concept of fundamental fairness "requires that the entry of a nol pros conform[] to 'the rudimentary demands of fair procedure' and cannot violate 'the civilized standards for [a] fair and impartial trial.'" *Id.* (quoting *Hook*, 315 Md. at 41–42).

In *Hook*, 315 Md. at 32–33, the defendant was on trial for first-degree and second-degree murder. Hook confessed that he shot the victims, but he presented an intoxication defense, which, if accepted, would have downgraded the first-degree murder charge to second-degree murder. *Id.* at 29, 38, 41–42. At the close of its case, the State, over Hook's objection, entered a nolle prosequi on the second-degree murder count. *Id.* at 37. The Supreme Court reversed Hook's conviction, stating:

> When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to nol pros the lesser included offense. . . . In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense.

*Id.* at 43–44. The Court held that the "exceptional circumstances" in that case "present[ed] a rare occasion calling for a tempering of the broad authority vested in a State's Attorney to terminate a prosecution by a nolle prosequi" because the State's use of the nol pros was "inconsistent with the rudimentary demands of fair procedure." *Id.* at 41–42.

35

In *Simms*, 456 Md. at 575–76, the Court addressed another limit to the State's authority to nol pros charges. In that case, the defendant appealed his convictions, arguing that the evidence was insufficient to support the convictions. *Id.* at 569. While the appeal was pending, the State entered a nolle prosequi of the charges. *Id.* at 555. As in this case, the State argued that Mr. Simms' appeal was then moot. *Id.* The Supreme Court addressed the appeal on its merits, holding that the State did not have the authority to enter a nol pros, and it was "simply a nullity, 'improper' and therefore 'ineffective.'" *Id.* at 576 (quoting *Friend v. State*, 175 Md. 352, 356 (1938)).

The primary basis for the Court's decision in *Simms* was that "the State does not have the authority to enter a nol pros after a final judgment has been entered against a defendant in a criminal case." *Id.* at 575. That rationale does not apply in this case. Once the circuit court vacated Mr. Syed's convictions, the ruling, although a final judgment, left Mr. Syed with no final judgment of conviction.

The *Simms* Court, however, went on to discuss another reason that the State did not have authority in that case to enter a nol pros. The Court stated: "Once a case reaches final judgment in a proceeding, and a party appeals that judgment, the issue 'comes within the exclusive jurisdiction of the appellate court.'" *Id.* at 576 (quoting *Irvin v. State*, 276 Md. 168, 172–73 (1975)). The Court held that the State lacked the authority to nol pros "to alter the final judgment *or* to eliminate the appellate process initiated by Mr. Simms." *Id.* at 578 (emphasis added). "Because Mr. Simms appealed his conviction and sentence, the trial court had no jurisdiction to alter the conviction or sentence by relying on the State's nol pros authority." *Id.* at 576. The Court held that the State could not attempt "an end run

36

around the appellate process" by seeking to erase a conviction and sentence, and therefore, "the nol pros entered in the trial court as to the charge underlying the conviction and sentence was simply a nullity, 'improper' and therefore 'ineffective.'" *Id.* (quoting *Friend*, 175 Md. at 356).[25]

These cases stand for the proposition that the State does not have unlimited authority to nol pros a case. Rather, the courts will temper the State's authority in exceptional circumstances, such as where it violates fundamental fairness, and in at least some circumstances, it circumvents the right to appeal.

Although *Simms*, 456 Md. at 576, discussed the impropriety of the State attempting "an end run around the appellate process" by entering a nol pros after an appeal was filed, that case involved an appeal from a judgment of conviction, which this case does not. Other jurisdictions, however, have held that, even in a situation not involving a final judgment of conviction, the prosecution cannot enter a nol pros while an appeal is pending, and a nol pros entered in that circumstance is invalid.

In *Sanders v. State*, 869 S.E.2d 411, 415 (Ga. 2022), the defendant was indicted for murder and other offenses. The trial court denied her motion to dismiss the indictment, and she appealed. *Id.* at 416. While the case was pending on appeal, the State reindicted

---

[25] The Supreme Court noted in *State v. Simms*, 456 Md. 551, 568 (2017), that, in *Hooper v. State*, 293 Md. 162 (1982), it previously addressed a situation where the State nol prossed the case while it was on appeal from the dismissal of indictments against the defendants based on its filing of new charges. The State then sought to withdraw its entry of a nol pros, but the Court held that the State did not have such authority. *Hooper*, 293 Md. at 171. The *Simms* Court stated that *Hooper* was inapposite because the procedural posture of that case was different, and the sole issue on appeal was the authority of the State to withdraw the entry of a nol pros. *Simms*, 456 Md. at 568–69.

Sanders, and the court then granted the State's motion to nol pros the indictment pending appeal. *Id.* The Supreme Court of Georgia rejected the argument that the entry of the nol pros mooted Sanders' appeal. *Id.* at 417. It held that the nol pros "was a nullity" because "[a] notice of appeal generally divests the trial court of jurisdiction to alter the judgment or order that is being appealed," and in that case, "Sanders' notice of appeal deprived the trial court of the authority to enter an order of nolle prosequi" on the indictment "while th[e] appeal was pending." *Id.* at 416–17.

In *Commonwealth v. Hudson*, 92 A.3d 1235, 1237 (Pa. Super.), *appeal denied*, 106 A.3d 724 (Pa. 2014), the Commonwealth appealed from an order granting Hudson's pretrial motion to suppress. After the appeal was filed, the Commonwealth requested the entry of "a voluntary nolle prosequi *with prejudice*" on Hudson's charges, which the court granted. *Id.* The Superior Court of Pennsylvania declined to quash the Commonwealth's appeal, noting that the nol pros was entered "*after* the appeal was filed." *Id.* at 1240 (emphasis in original). Because the trial court lacked the "authority to proceed any further due to the pending appeal," the "filing of the nolle prosequi and the subsequent order [entering the nol pros] were nullities." *Id.* at 1241.

At first glance, *Sanders* and *Hudson* support Mr. Lee's argument that the State's nol pros, entered after the appeal was noted, was a nullity. In Maryland, however, unlike the above cases, trial courts "are not stripped of their jurisdiction to take post-judgment action simply because an appeal is pending from that judgment." *Cottman v. State*, 395 Md. 729, 740 (2006). "[A]bsent a stay required by law, or one obtained from an appellate court,"

the trial court "has the authority to exercise the 'fundamental jurisdiction' which it possesses." *Id.* at 740–41 (quoting *State v. Peterson*, 315 Md. 73, 81 (1989)).

The court may not, however, exercise that discretion "in a manner that affects either the subject matter of the appeal or the appellate proceeding itself—that, in effect, precludes or hampers the appellate court from acting on the matter before it." *Jackson v. State*, 358 Md. 612, 620 (2000). *Accord Peterson*, 315 Md. at 82 n.3 ("a trial court ordinarily should not proceed with a hearing in the circumstances here, thereby mooting an issue before an appellate court"). If a trial court does interfere with the proceedings on appeal, however, it "'may be subject to reversal on appeal, but it is not void *ab initio* for lack of jurisdiction to enter it.'" *Cottman*, 395 Md. at 742 (quoting *Jackson*, 358 Md. at 620).

In *Cottman*, 395 Md. at 736–37, after the defendant was convicted and his appeal was pending, the circuit court granted him a new trial. The Supreme Court determined that this action did not interfere with the subject matter of the appeal, but even if it did, it was not void. *Id.* at 741–42. The grant of the new trial eliminated the judgment of conviction, there was no longer a judgment for the Appellate Court to review, and the appeal was moot. *Id.* at 743.[26]

---

[26] Although the Supreme Court's opinion in *Simms*, 456 Md. at 576, expressed concern about the fairness of the entry of a nol pros while an appeal was pending, holding that the nol pros in that case was a nullity when it was entered while an appeal was pending from a final judgment of conviction, the Court recently stated that it did not read *Simms* "as a retreat from those cases that have discussed a circuit court's continuing fundamental jurisdiction during the pendency of an appeal." *State v. Thomas*, 465 Md. 288, 300 n.9 (2019).

Thus, in the ordinary case, the noting of an appeal would not deprive the State from entering a nolle prosequi. This, however, is not an ordinary case.

As indicated, the circuit court granted the motion to vacate on September 19, 2022. Based on Rule 4-333(i), the State had 30 days, i.e., until October 19, 2022, to "either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count." On September 28, 2022, Mr. Lee filed a notice of appeal.

Mr. Lee appeared to anticipate the possibility that the State would enter a nolle prosequi of the vacated charges prior to having his appeal heard by this Court. The day after he filed his appeal, Mr. Lee filed, in the circuit court, a motion to stay further proceedings "to avoid irreparable prejudice to . . . [his] right to appeal." On the following Wednesday afternoon, October 5, 2022, after no ruling had been issued in that court, Mr. Lee filed a motion to stay in this Court.[27] On Thursday, October 6, 2022, Mr. Syed filed in this Court a notice of intent to respond to the motion to stay, which would be due on Thursday, October 13, 2022.[28] At 8:55 a.m. on Tuesday, October 11, 2022, the State entered a nol pros of Mr. Syed's vacated charges. The court stated that the nol pros was "entered."

---

[27] As indicated, the circuit court had not ruled on Mr. Lee's motion to stay at that point, and it did not do so until after the State entered a nol pros of the charges, at which time it denied the motion, stating that the State's nol pros rendered the motion moot.

[28] The motion to stay was filed on October 5, 2022, and a copy of the motion was served on the parties that same day. Thus, because October 10, 2022, was a court holiday, a response to the motion was due by Thursday, October 13, 2022. *See* Md. Rule 8-431(b); Md. Rule 1-203(a).

The timing of the entry of the nol pros is important. It was entered soon after the filing of the motion to stay in this Court, on the morning of the third business day after Mr. Lee filed the motion. At that point, there were only two days before the response to the motion to stay was due, after which this Court potentially could have granted the motion to stay. The nol pros was filed with eight days still remaining before the 30-day time period provided by Rule 4-333(i) required the State to "either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count."

Under these circumstances, we conclude that the nol pros was entered with the purpose or "necessary effect" of preventing Mr. Lee from obtaining a ruling on appeal regarding whether his rights as a victim's representative were violated. *See Curley*, 299 Md. at 462; *Simms*, 456 Md. at 576. This action conflicted with "the State's interest in procuring justice," which requires it "to ensure that the constitutional rights of crime victims are honored and protected." *State v. Casey*, 44 P.3d 756, 764 (Utah 2022). By entering a nol pros while a motion to stay was pending, and while the State still had more than a week before Rule 4-333(i) required action, the State violated the requirement that the entry of a nol pros conform to "the rudimentary demands of fair procedure," *see Hook*, 315 Md. at 42, and it resulted in an injustice to Mr. Lee. Allowing a nol pros in this circumstance gives the State a mechanism to insulate a defective proceeding from appellate review, and it prevents victims from receiving the rights to which they are entitled.

To be sure, as Mr. Syed points out, the prior circumstances tempering the authority of the State's Attorney to nol pros have involved injustice to the defendant, and the injustice here is not to the defendant, but to Mr. Lee, the victim's representative. Nevertheless, the

41

State of Maryland has given constitutional and statutory rights to crime victims, and the State's Attorney should not be allowed to thwart those rights in the way that happened in this case. The nol pros entered under the circumstances of this case violated Mr. Lee's right to be treated with dignity and respect. *See* Md. Const., Decl. of Rts., art. 47(a); CP § 11-1002(b)(1).

Under the unique facts and circumstances of this case, where the State entered a nol pros two days before the response to the motion to stay was due, the deadline for the State to "either enter a *nolle prosequi* of the vacated count or take other appropriate action," Md. Rule 4-333(i), was eight days away, and permitting the entry of the nol pros would result in injustice to the victim, we conclude that exceptional circumstances exist to temper the authority of the State to enter a nol pros. Accordingly, we hold that the nol pros was void, and the circuit court erred in accepting the nol pros at the court proceeding on October 11, 2022.[29]

Because the nol pros was void, it was a nullity, and it does not render this appeal moot. Accordingly, we proceed to address the merits of the appeal, i.e., Mr. Lee's claims that his rights to notice, to attend, and to be heard were violated.

---

[29] We recognize that Article 47(c) of the Maryland Declaration of Rights states: "Nothing in this Article . . . authorizes a victim of crime to take any action to stay a criminal justice proceeding." It is not clear, however, that a prosecutor's action in entering a nol pros is a "criminal justice proceeding." *See Barnett v. Antonacci*, 122 So. 3d 400, 404–06 (Fla. Dist. Ct. App. 2013) (a decision to nol pros a case is not a stage of a criminal proceeding within the constitutional provision relating to rights of crime victims), *rev. denied*, 139 So. 3d 884 (Fla. 2014). By entering a nol pros before the response to the motion to stay was filed and this Court made a ruling on the motion, the State prevented this Court from deciding whether a stay could be granted to prevent the nol pros.

# IV.

## Right to Notice

Mr. Lee contends that the State violated his right to notice in several ways. First, he argues that the State was "woefully deficient in notifying [him] before moving to vacate," asserting that, although vacatur had been "in the works for nearly a year," the State first notified him of its motion to vacate on September 12, 2022, two days before filing the motion on September 14, 2022. Even then, it "disclosed no relevant details and did not tell Mr. Lee that there would be a hearing." Second, he contends that he was "excluded from the *ex parte* proceeding held on Friday, September 16," and he did not even know about it until the vacatur hearing. Third, he argues that the State notified him on Friday, September 16, 2022, that there would be an "in-person hearing" on Monday, September 19, 2022, advising that he could watch via Zoom, but not advising that he had a right to participate. He argues that this did not constitute reasonable notice, and "he could not travel cross-country on such short notice."

The State agrees that Mr. Lee did not receive sufficient notice of the Monday, September 19, 2022, vacatur hearing, "which led to the denial of his right to attend the hearing in person, as contemplated by law," and "unfairly compromised his ability to be heard on the impact of the vacatur decision on him and the rest of the victim's family." It asserts that "Friday notice of a Monday hearing to a victim representative known to be in California was not reasonably calculated to afford [Mr.] Lee his right to attend the vacatur hearing in person."

Mr. Syed contends that "the State's victim notification complied with the applicable constitutional provisions, statutes, and rules." He argues that, although it was not required to do so, the State advised Mr. Lee of its intent to file the vacatur motion, emailed a draft of the motion, and advised that there would be a hearing. It notified Mr. Lee as soon as practicable after a hearing was scheduled, as required by the statute and rule. Mr. Syed asserts that the State complied with the notice requirement "by calling, emailing, and texting [Mr. Lee] to notify him of the hearing, the date, time, and location, and facilitating his attendance by providing a Zoom link."

As indicated, CP § 8-301.1(d)(1) addresses victims' rights to notice in vacatur proceedings, as follows: "Before a hearing on a motion filed under this section, the victim or victim's representative shall be notified, as provided under § 11-104 or § 11-503 of this article." CP § 11-104(f)(1) provides:

> (f)(1) Unless provided by the MDEC system, the prosecuting attorney shall send a victim or victim's representative prior notice of each court proceeding in the case, of the terms of any plea agreement, and of the right of the victim or victim's representative to submit a victim impact statement to the court under § 11-402 of this title if:
>
> (i) prior notice is practicable; and
>
> (ii) the victim or victim's representative has filed a notification request form or followed the MDEC system protocol under subsection (e) of this section.

CP § 11-503(b) provides that, after conviction and sentencing, "the State's Attorney shall notify the victim or victim's representative of a subsequent proceeding in accordance with § 11-104(f) of this title" if the victim or victim's representative submits a notification request form. A "subsequent proceeding" includes, among other things, "a hearing on a

44

request to have a sentence modified or vacated under the Maryland Rules" and "any other postsentencing court proceeding." CP § 11-503(a)(2), (7).[30]

Maryland Rule 4-333 further provides:

> Pursuant to Code, Criminal Procedure Article, § 8-301.1(d), the State's Attorney shall send written notice of the hearing to each victim or victim's representative, in accordance with Code, Criminal Procedure Article, § 11-104 or § 11-503. The notice shall contain a brief description of the proceeding and inform the victim or victim's representative of the date, time, and location of the hearing and the right to attend the hearing.

Md. Rule 4-333(g)(2). If "a victim or victim's representative" is "entitled to notice" pursuant to Rule 4-333(g) and "is not present at the hearing, the State's Attorney shall state on the record the efforts made to contact that person and provide notice of the hearing." Md. Rule 4-333(h)(1).

With that background, we will address Mr. Lee's three claims of inadequate notice in this case.

## A.

### Filing of Motion to Vacate

Mr. Lee first contends that the State was "woefully deficient" in notifying him that it would be filing a motion to vacate. He cites no authority, however, that supports the proposition that the State is required to give notice of motions that it is filing. Although it

---

[30] As discussed in more detail, *infra*, CP § 8-301.1(d)(2) provides: "A victim or victim's representative has the right to attend a hearing on a motion filed under this section, as provided under § 11-102 of this article." CP § 11-102(a) provides: "If practicable, a victim or victim's representative who has filed a notification request form under § 11-104 of this subtitle has the right to attend any proceeding in which the right to appear has been granted to a defendant."

may have been good practice to have given more notice in that regard, the statutes require notice only of court proceedings, not the filing of a motion.

## B.

## Chambers Discussion

Mr. Lee's next claim is that the State did not give him notice of the Friday, September 16, 2022, chambers discussion. He argues that this hearing violated the First Amendment to the United States Constitution and the "law that court hearings be open to the public." As we have noted, however, the issues in this appeal are limited to whether Mr. Lee's rights as a victim's representative were violated. In that context, he cites no authority in support of the proposition that the State was required to give him notice of this event.

This Court has not addressed whether a victim or victim's representative has a right to notice prior to an off-the-record chambers conference. In *Brown v. State*, 272 Md. 450, 479–80 (1974), however, the Supreme Court held that a defendant does not have the right to attend such a conference. The Court explained:

> We are fully cognizant of the necessity of conferences between the court and counsel—either before or during a trial—for the purpose of discussing scheduling, other collateral matters of procedure, to hear arguments of law on evidentiary rulings, to confer on proposed instructions to the jury, and the like. . . . [S]uch conferences have not been held to be a part of the trial. To require that all such conferences be conducted in open court, or that the defendant be present in chambers, or at a bench conference, on each occasion would create administrative burdens, diminish the decorum of the proceedings, and in many instances involve security risks—none of which can be balanced by any gain from the defendant's presence.

In *State v. Damato-Kushel*, 173 A.3d 357, 366 (Conn. 2017), the Supreme Court of Connecticut held that a victim did not have the right to attend an off-the-record, in chambers conference pursuant to a constitutional right to attend "court proceedings the accused has the right to attend." Noting that the conference in that case was "conducted informally and off the record," the court stated that it was hesitant to call such a conference a "court proceeding." *Id.* It ultimately concluded "that the victim has no right to attend off-the-record, in-chambers disposition conferences because the defendant herself has no right to do so." *Id.*

Although these cases involve the right to attend, a similar analysis would apply to notice because the notice requirements facilitate the right to attend. In Maryland, constitutional and statutory provisions address the victim's right to notice in the following contexts: a "criminal justice proceeding, as those rights are implemented," Md. Const., Decl. of Rts., art. 47(b); a hearing on a motion pursuant to CP § 8-301.1; each "court proceeding in the case," if prior notice is practicable, CP § 11-104(f)(1); "trial court proceedings" and "postsentencing proceedings," CP § 11-1002(b)(3); and a hearing on a request to have a sentence modified or vacated, CP § 11-503(a)(2),(7). We construe those provisions to refer to a formal, on-the-record court proceeding. We hold that a victim's rights to notice, and to attend, court proceedings do not apply to off-the-record, in-chambers conferences. We note, however, that, if there is an in-chambers conference, the judge should put on the record what was discussed in chambers. *See Poole v. State*, 77 Md. App. 105, 120 (1988) (at the conclusion of a chambers conference, the court should

announce on the record, "at a very minimum," what was agreed to during the discussion), *aff'd*, 321 Md. 482 (1991).

## C.

## Vacatur Hearing

With respect to the Monday, September 19, 2022, on-the-record hearing on the motion to vacate, there is no dispute that the State was required to give Mr. Lee notice of this hearing pursuant to CP § 8-301.1(d)(1). Although the record does not contain a victim notification request form, and at oral argument, counsel for Mr. Lee stated that he had not been able to ascertain whether such a form had been filed, this Court made clear in *Antoine*, 245 Md. App. at 545–46, that a failure to file the statutory notification request form was "no barrier" to asserting a violation of a victim's rights if the parties and the court were aware of the victim's interest in being heard. That clearly was the case here, and Mr. Syed does not argue that any failure to file a victim notification request form precludes review of Mr. Lee's claims on appeal.

There also is no dispute that the prosecutor gave Mr. Lee notice of the hearing. The question here is whether the State's notice to Mr. Lee was sufficient under the statute and Rule 4-333. This presents a question of law, which we review *de novo*. *See Wheeling v. Selene Fin. LP*, 473 Md. 356, 373 (2021) ("Where questions of law and statutory interpretation are presented, this Court reviews them *de novo*, without deference to . . . the circuit court's . . . analysis."); *Otto v. State*, 459 Md. 423, 446 (2018) ("Interpretation of the Maryland Rules presents a question of law, reviewed *de novo* to ascertain whether the trial court was legally correct in its rulings."); *Bray v. Aberdeen Police Dep't*, 190 Md.

48

App. 414, 437 ("Whether the notice provided to appellant was sufficient was purely a question of law."), *cert. denied*, 415 Md. 39 (2010).

The record reflects that the prosecutor, Ms. Feldman, sent an email to Mr. Lee on Friday afternoon, September 16, 2022, right after the chambers hearing, which the parties represent is when the Monday, September 19 hearing date was set. As indicated, notice clearly was given. The question is whether that notice complied with the intent of the statute and the Rule.

Although the parties focus on the actions of the prosecutor, our review as an appellate court is on the rulings and actions of the trial court. *Walls v. State*, 228 Md. App. 646, 668 (2016) ("Our function is not to review conduct of counsel, the parties, or witnesses for error. We focus on the rulings of the court, some of which may be made in response to conduct of the lawyers, parties, or witnesses."). Thus, the question we address is not whether the prosecutor acted as soon as possible in providing notice, but whether the circuit court erred in determining that the notice requirement had been satisfied before proceeding with the hearing. We conclude that the court erred in making that finding here.

CP § 11-103(e) "makes courts responsible for ensuring that victims' rights are honored, and authorizes them to fashion appropriate remedies if not." *Antoine*, 245 Md. App. at 533. Amendments to this statute enacted in 2013, *see* 2013 Md. Laws ch. 363, expanded the ability of courts to give relief to victims deprived of their rights. The statute provides, in part, as follows:

> (e)(1) In any court proceeding involving a crime against a victim, the court shall ensure that the victim is in fact afforded the rights provided to victims by law.

(2) If a court finds that a victim's right was not considered or was denied, the court may grant the victim relief provided the remedy does not violate the constitutional right of a defendant or child respondent to be free from double jeopardy.

(3) A court may not provide a remedy that modifies a sentence of incarceration of a defendant or a commitment of a child respondent unless the victim requests relief from a violation of the victim's right within 30 days of the alleged violation.

CP § 11-103(e)(1)–(3).

Rule 4-333(h)(1) also indicates that the court must ensure that victims' rights are honored. It provides that, "[i]f the defendant or a victim or victim's representative entitled to notice under section (g) of this Rule is not present at the hearing, the State's Attorney shall state on the record the efforts made to contact that person and provide notice of the hearing." Md. Rule 4-333(h)(1). Thus, the Rule envisions that, when the victim or victim's representative is not present, the State must advise of its efforts to notify the victim, and the court determines whether the notice requirements have been satisfied.

Here, when Mr. Lee was not present for the hearing, the court asked the State about its efforts to notify the victim. The prosecutor advised that, on Friday, September 16, 2022, the State emailed Mr. Lee with the time and date of the hearing on Monday, one business day later. The email stated that the hearing would be in person, but Mr. Lee and his family could watch via Zoom. Mr. Lee did not respond to that email, so the State reached out again on Sunday, September 18, 2022, and Mr. Lee indicated that he would watch the proceeding on Zoom.

50

Counsel for Mr. Lee advised the court at the beginning of the hearing that Mr. Lee wanted to be there in person, and counsel requested a postponement of seven days so that Mr. Lee could arrange to take leave from work and fly from California to be present in the courtroom, in the same way that the court and the parties were present. The court denied the requested postponement and proceeded without Mr. Lee in the courtroom. He was permitted to give a statement on Zoom, with only 30 minutes allowed for him to go home from work to get on Zoom and prepare what he wanted to say.

In determining whether the court erred in finding that the notice given was sufficient under CP § 8-301.1(d) and Rule 4-333, we must interpret the word "notice." In construing the statute, we note well-settled rules of statutory construction:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.
>
> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

> Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions.
>
> In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*State v. Bey*, 452 Md. 255, 265–66 (2017). Similarly, "'[t]o interpret rules of procedure, we use the same canons and principles of construction used to interpret statutes.'" *Hoile*, 404 Md. at 608 (quoting *State ex rel. Lennon v. Strazzella*, 331 Md. 270, 274 (1993)).

Here, the circuit court stated that CP § 8-301.1 provides that "notice" must be given, not "reasonable notice." It is true that Maryland's statute, unlike other jurisdictions' victims' rights provisions, provides only for notice, *not* reasonable notice. *Compare* CP § 8-301.1(d)(1) ("[b]efore a hearing on a motion filed under this section, the victim or victim's representative shall be notified"), *with* 18 U.S.C. § 3771(a)(2) (granting crime victims "[t]he right to reasonable, accurate, and timely notice of any public court proceeding . . . involving the crime"), Cal Const. art. I, § 28(b)(7) (granting crime victims the right "[t]o reasonable notice of all public proceedings, including delinquency proceedings, upon request, at which the defendant and the prosecutor are entitled to be present"), N.C. Gen. Stat. § 15A-830.5(b)(1) (granting crime victims "[t]he right, upon request, to reasonable, accurate, and timely notice of court proceedings of the accused"), *and* Neb. Rev. Stat. § 81-1848(1)(b) (granting crime victims the right "[t]o receive from

the county attorney advance reasonable notice of any scheduled court proceedings and notice of any changes in that schedule").

Nevertheless, in determining the intended scope of the term "notice," which is not defined, we apply "'the language's natural and ordinary meaning, by considering the express and implied purpose of the statute, and by employing basic principles of common sense, the meaning these words intended to convey.'" *75-80 Properties, L.L.C. v. Rale, Inc.*, 470 Md. 598, 645 (2020) (quoting *Goff v. State*, 387 Md. 327, 344 (2005)).  Thus, we must construe CP § 8-301.1(d) and Rule 4-333 in light of the constitutional and statutory mandate that crime victims "be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process," Md. Const., Decl. of Rts., art. 47(a), CP § 11-1002(b)(1), as well as the legislative intent that a victim has the right to notice and to attend the vacatur hearing.  Clearly, notice to a victim in California that there would be a hearing in Baltimore a minute later would not be sufficient to comply with the statutory objectives, a point which Mr. Syed's counsel conceded, appropriately, at oral argument.  Similarly, the State's notice here, an email one business day before the hearing on Monday, September 19, 2022, was not sufficient to reasonably allow Mr. Lee, who lived

in California, to attend the proceedings, as was his right.[31]  The court erred in finding that

Mr. Lee received sufficient notice pursuant to CP § 8-301.1(d) and Rule 4-333.[32]

The dissent's conclusion that the notice given was sufficient is based on the conclusion that the notice was sufficient to allow Mr. Lee to appear at the vacatur hearing by Zoom, which was sufficient to satisfy Mr. Lee's right to attend the hearing.  As discussed below, we disagree that requiring Mr. Lee to attend the hearing remotely, when he wanted to attend in person, satisfied Mr. Lee's right to attend the hearing.

## V.

### Right to Attend

As indicated, CP § 8-301.1(d)(2) addresses victims' rights to attend vacatur proceedings as follows: "A victim or victim's representative has the right to attend a hearing on a motion filed under this section, as provided under § 11-102 of this article." CP § 11-102(a) provides: "If practicable, a victim or victim's representative who has filed a notification request form under § 11-104 of this subtitle has the right to attend any proceeding in which the right to appear has been granted to a defendant."

Based on these statutes, Mr. Syed agrees that Mr. Lee had the right to attend the Monday vacatur hearing.  Mr. Syed asserts, however, that Mr. Lee's right to attend was

---

[31] Ms. Feldman emailed Mr. Lee on Friday, September 16, 2022, but we do not know when he received the email.  The record reflects only that he knew by Sunday afternoon, when he texted Ms. Feldman.

[32] The General Assembly may want to revisit the notice provisions in CP § 8-301.1, and other victims' rights statutes, to expressly provide that reasonable notice is required, to prevent what happened here from happening in other cases.

54

satisfied because Mr. Lee attended the hearing "via Zoom," and "attendance at hearings via Zoom is commonplace since the COVID pandemic."

Mr. Lee and the State argue that Mr. Lee's right to attend the vacatur hearing was not satisfied here. They argue that the vacatur statute envisions attendance in person, as opposed to Zoom, asserting: "Even after the experience of the COVID-19 pandemic, remote hearings are the exception, not the rule. And it was against the backdrop of open, in-court hearings that the General Assembly enacted the vacatur statute." As explained below, we agree that Mr. Lee's right to attend the vacatur hearing was violated.

To be sure, since the COVID-19 pandemic, we have all learned to adapt to Zoom and other virtual platforms, and we have conducted proceedings by Zoom, as necessary and desired. *See Tallant v. State*, 254 Md. App. 665, 688 n.17 (2022) ("Zoom is an online video platform, which has been used to facilitate remote hearings because some court hearings have not been able to be held in person due to the COVID-19 pandemic."). Indeed, for a period of time during the COVID-19 pandemic, proceeding by Zoom was necessary to allow courts to administer justice while at the same time protect the public health in this State.

This case, however, does not involve a virtual hearing due to COVID-19 health concerns. The vacatur hearing in this case was an in-person proceeding where everyone involved, except Mr. Lee, was present in person.

The parties have not cited, and our independent research has not revealed, any case directly addressing the issue presented here, i.e., whether a victim's right to attend a vacatur hearing means a right to attend in person or whether remote attendance satisfies that right.

The language of CP § 8-301.1 and the legislative history similarly do not shed light on the issue. We note, however, that CP § 8-301.1 was enacted in 2019, before the COVID-19 pandemic and the general acceptance and use of Zoom to conduct a wide range of court proceedings. Accordingly, we conclude that the intent of the General Assembly in giving crime victims the right to attend vacatur hearings was to give them the right to attend in person.

We recognize, however, that the lessons we learned during the pandemic about the availability of technology have value going forward, now that the COVID-19 risk is decreasing. Attendance by Zoom may be appropriate in some circumstances. That does not, however, take away from the value in attending a proceeding in person, when desired, particularly when all other individuals involved in the proceeding appear in person. Here, although § CP 11-102(a) provides that the victim "has the right to attend any proceeding in which the right to appear has been granted to a defendant," Mr. Syed was allowed to attend in person, but Mr. Lee was required to attend via Zoom.

In March 2022, with the COVID-19 risk decreasing, then-Chief Judge Getty issued an administrative order addressing the use of remote electronic participation in judicial proceedings. He noted specific rules of civil procedure that were "intended to take advantage of the technology that allows for reliable interactive communications to provide more efficient access to the courts without sacrificing the required fairness in judicial proceedings in circuit court civil proceedings." Administrative Order on the Implementation of Remote Electronic Judicial Proceedings at 1, ¶ 2 (March 28, 2022). We discuss two of those rules, which we find instructive in this case.

56

Rule 2-802(a), which addresses non-evidentiary proceedings in civil cases, provides that a court "**may permit or require** one or more participants or all participants to participate in a non-evidentiary proceeding by means of remote electronic participation," with some exceptions. (Emphasis added). Rule 2-803(a), by contrast, provides that a court, "on motion or on its own initiative, **may permit** one or more participants or all participants to participate in an evidentiary proceeding by means of remote electronic participation," under certain circumstances. (Emphasis added).

Although this is a criminal case, not a civil case, and there are no specific rules addressing remote proceedings in this type of proceeding, principles from these rules inform our analysis. The civil rules provide that, in both an evidentiary proceeding and a non-evidentiary proceeding, the court may permit, in some circumstances, a person to participate in a proceeding remotely. There certainly might be situations where a person would prefer to attend that way, due to travel distance, personal health, or other reasons, and utilizing technology to accommodate that preference, in appropriate circumstances, is valuable. In a civil evidentiary proceeding, however, the court does not have the authority to "require" a participant to participate via Zoom or other remote electronic proceeding.

We are of the view that, similar to the rule preventing a court from requiring a participant to participate remotely in an evidentiary proceeding in a civil case, a court is not permitted to *require* a victim, who has a right to attend a vacatur proceeding, to attend the proceeding remotely, in the situation where the defendant and other participants are permitted to attend in person. Nevertheless, that is what the court did here, in what indisputably was (or should have been) an evidentiary hearing.

If Mr. Lee wanted to attend the proceedings virtually, permitting him to do so would be fine. Mr. Lee advised through counsel, however, that he wanted to attend the hearing in person with the other participants, but he was not given sufficient notice to be able to do so. He asked for a postponement to be allowed to attend in person, but the court denied the request, despite there being no showing that it was necessary to hold the vacatur hearing that day, as opposed to granting Mr. Lee's request for a seven-day postponement. Under these circumstances, we conclude that the court erred and/or abused its discretion in failing to grant a postponement and in finding that Mr. Lee's attendance via Zoom satisfied his right, as a victim's representative, to attend the hearing.

In sum, we hold that in the circumstance where, as here, a crime victim or victim's representative conveys to the court a desire to attend a vacatur hearing in person, all other individuals involved in the case are permitted to attend in person, and there are no compelling reasons that require the victim to appear remotely, a court requiring the victim to attend the hearing remotely violates the victim's right to attend the proceeding. Allowing a victim entitled to attend a court proceeding to attend in person, when the victim makes that request and all other persons involved in the hearing appear in person, is consistent with the constitutional requirement that victims be treated with dignity and respect.

## VI.

### Right to Be Heard

Mr. Lee contends that the circuit court violated his right to be heard and to meaningfully participate in the hearing on the motion to vacate Mr. Syed's convictions.

58

He asserts that the court gave him "only 30 minutes' notice to race home, gather his thoughts without the input of counsel, and speak extemporaneously about his sister's murder—with no information about the evidentiary basis for vacatur." He also argues that the "court gave no consideration to Mr. Lee's statement; all indications are that it had already made its decision prior to the hearing."[33] Mr. Lee further contends that we should remand for a new vacatur hearing where he is "permitted to present evidence, call witnesses, and challenge the [S]tate's evidence and witnesses."

The State argues that Mr. Lee's right to be heard was violated because he was not given sufficient time to prepare a victim impact statement. It asserts that CP § 11-403(b) provides Mr. Lee with the right to give a statement. The State disagrees, however, that Mr. Lee has any right "to present evidence, call witnesses, and challenge the [S]tate's evidence and witnesses." It states that "[n]o such victim's rights exist in connection with the vacatur statute," noting that a victim is not a party to a criminal or juvenile proceeding. *See* CP § 11-103(b); Md. Rule 8-111(c).

Mr. Syed contends that, although CP § 8-301.1(d) provides the right to attend a vacatur hearing, it "does not provide the victim or victim's representative with the right to make a victim impact statement or to participate in any other way." He asserts that CP § 11-403 does not provide such a right because it applies only to a "sentencing or disposition

---

[33] In that regard, Mr. Lee points to the court's comments indicating that it was aware that the State and Mr. Syed had arranged a joint press conference, and he asserts that "the court apparently coordinated with Mr. Syed's correctional facility to ensure that he had his property and street clothes on hand." He asserts that his "statement was, at best, an empty ritual."

hearing," which is not implicated in a vacatur proceeding, which involves legal arguments as opposed to a discretionary sentencing decision.[34]

As indicated, CP § 8-301.1(d) provides that, in vacatur proceedings, victims have the right to "be notified" prior to the hearing, *see* CP § 8-301.1(d)(1), and they have "the right to attend" the hearing, *see* CP § 8-301.1(d)(2). The statute does not, however, provide for a right to be heard at the vacatur hearing.

In other sections of Title 11 of the Criminal Procedure Article, however, the General Assembly has provided the victim with the right to be heard. For example, CP § 11-402(a) and (d) provide that a presentence investigation shall include a victim impact statement, and the court shall consider the statement in determining the appropriate sentence. CP § 11-403(b) provides that, in a sentencing hearing or disposition hearing in a juvenile court proceeding, where a sentence is imposed or altered, "the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition." Where language is included providing for a right in one provision, but not in a related provision, it suggests "that the absence of comparable language . . . was by design." *Md.-Nat. Cap. Park & Plan. Comm'n v. Anderson*, 164 Md. App. 540, 577 (2005), *aff'd*, 395 Md. 172 (2006). *See also Harris v. State*, 353 Md. 596, 606 n.3 (1999) ("The General Assembly has created specific intent

---

[34] Mr. Syed further argues that, even if Mr. Lee had the right to participate, he did so via Zoom. We have already explained, *supra*, that his appearance via Zoom did not satisfy Mr. Lee's right to attend pursuant to CP § 8-301.1(d). To the extent a victim has a right to be heard at a hearing, the same analysis would apply.

60

crimes, using explicit language to indicate the required specific intent. It is evident that when the Legislature desires to create a specific intent crime, it knows how to do so.").

The legislative history of CP § 8-301.1 also indicates an intent not to include the right to be heard at a vacatur hearing. When enacting CP § 8-301.1, the General Assembly was alerted to concerns that the victim should have the right to be heard at a vacatur hearing. At a hearing before the House Judiciary Committee, multiple people testified that the victim should have, not only the right to attend such a hearing, but also the right to be heard. *See* Hearing on H.B. 874 Before the H. Comm. on the Judiciary, 2019 Leg., 439th Sess. (Feb. 26, 2019). And Scott Shellenberger, Baltimore County State's Attorney, proposed adding language to the bill to provide that the victim had a "right to be heard at the hearing." *See* E-mail from Scott Shellenberger, Balt. Cnty. State's Att'y, to Del. Erek Barron (Feb. 25, 2019) (attached as exhibit to Letter from Del. Erek Barron to Md. Gen. Assemb. H. Jud. Comm., H.B. 874, 2019 Leg., 439th Sess. (Feb. 25, 2019)). Moreover, the Maryland Judiciary opposed the bill, noting: "[T]he bill indicates that in addition to a right to notice, a victim has a right to attend a hearing but it is not clear under this legislation if the victim has a right to be heard at the hearing." Memorandum from Suzanne D. Pelz, Esq., Md. Jud. Conf., to Md. Gen. Assemb. H. Jud. Comm., H.B. 874, 2019 Leg., 439th Sess. (Feb. 20, 2019).

Despite this voiced concern regarding the lack of an express provision allowing the victim the right to be heard at a vacatur hearing, the General Assembly did not include a right for a victim to give a statement at a hearing on a motion to vacate a conviction, notwithstanding that such a right was included in other statutes. Although we may think it

advisable to allow the victim the right to be heard at a vacatur hearing, particularly where there is no one advocating for the conviction to be upheld, the statute, as written, does not provide that right.

Mr. Lee and the State contend that, despite the lack of language providing a right to be heard in CP § 8-301.1, another statute, CP § 11-403, provides the right to be heard at a hearing on a motion to vacate a conviction. We are not persuaded.

CP § 11-403(b) provides that, in a sentencing hearing, or disposition hearing in a juvenile court proceeding, where a sentence is imposed or altered, "the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition."[35] This statute permits a victim to address the court before the imposition of a sentence or a disposition in a juvenile court proceeding, either initially or when altering the sentence or disposition. *See Hoile*, 404 Md. at 605–06 (CP § 11-403 addresses victims' right to be heard at sentencing hearings); *Antoine*, 245

---

[35] CP § 11-403 provides:

(a) In this section, "sentencing or disposition hearing" means a hearing at which the imposition of a sentence, disposition in a juvenile court proceeding, or alteration of a sentence or disposition in a juvenile court proceeding is considered.

(b) In the sentencing or disposition hearing the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition:

(1) at the request of the prosecuting attorney;

(2) at the request of the victim or the victim's representative; or

(3) if the victim has filed a notification request form under § 11-104 of this title.

Md. App. at 531 (CP § 11-403 "establishes the victim's right to address the court before the court imposes a sentence or other disposition.").

The imposition of a sentence is a discretionary decision, in which a relevant factor is the impact that the crime had on the victim. *See Medley v. State*, 386 Md. 3, 6 (2005) ("A sentencing judge has wide discretion in achieving the principal objectives of sentencing—punishment, deterrence, and rehabilitation."); *Ball v. State*, 347 Md. 156, 195 (1997) (At sentencing, "'trial judges must give appropriate consideration to the impact of crime upon the victims'; '[a]n important step towards accomplishing that task is to accept victim impact testimony wherever possible.'") (quoting *Cianos v. State*, 338 Md. 406, 413 (1995)), *cert. denied*, 522 U.S. 1082 (1998); *State v. Rodriguez*, 125 Md. App. 428, 442 (modification or reduction of a sentence is within the trial court's sound discretion), *cert. denied*, 354 Md. 573 (1999).

It certainly can be argued that the vacatur of a defendant's conviction is the ultimate alteration of a sentence, in the sense that it sets it aside. *See Walter v. Gunter*, 367 Md. 386, 395 n.8 (2002) ("Vacatur is . . . '[t]he act of annulling or setting aside. A rule or order by which a proceeding is vacated.'") (quoting *Vacatur*, *Black's Law Dictionary* (5th ed. 1979)). A hearing on a motion to vacate a conviction pursuant to CP § 8-301.1, however, does not involve a discretionary ruling regarding whether to alter a sentence. Rather, it is a proceeding after conviction and sentencing that seeks to vacate the judgment based on legal grounds. In this regard, a hearing on a motion to vacate a conviction pursuant to CP § 8-301.1 is similar to a motion for a new trial pursuant to CP §§ 6-105 and 6-106, a petition for post-conviction relief pursuant to the Uniform Postconviction Procedure Act, CP §§ 7-

101 to 7-301, a petition for a writ of actual innocence pursuant to CP § 8-301, and an appeal to this Court. In none of those proceedings is there statutory authority for the victim to have rights other than the right to notice and to attend, and victims generally do not speak at those proceedings.

If we were to hold that CP § 11-403(b) authorized a victim's right to be heard here, that would result in a huge shift in practice. We have not been given persuasive reasons to so hold.

Mr. Lee and the State point to Rule 4-333(h), which, after addressing the conduct of a vacatur hearing, includes the following: "**Cross reference:** For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see Code, Criminal Procedure Article, § 11-403." This cross-reference, however, read in context with the statutory scheme, and in the absence of specific language in Rule 4-333 indicating that the victim has a right to be heard, suggests that it is listed as a comparison to victims' rights in sentencing hearings, where the victim does have the right to be heard. *See* Standing Committee on Rules of Practice and Procedure, *Two Hundred and First Report of the Standing Committee on Rules of Practice and Procedure*, at 17 (Sept. 12, 2019) (noting that the cross-reference was "included after section (h) to highlight the right of the victim or victim's representative to address the court during a sentencing or disposition hearing").

Mr. Lee argues that the Maryland Constitution gives victims rights, including the right "to be heard at a criminal justice proceeding, as these rights are implemented." Md. Const., Decl. of Rts., art. 47(b). The General Assembly, however, has implemented these

64

rights by giving victims and their representatives the right to be heard at sentencing proceedings, but not at a proceeding pursuant to CP § 8-301.1.

Accordingly, we hold that a victim or victim's representative does not have a *right* to be heard at a vacatur hearing. We note, however, that there is nothing preventing a court from giving a victim an opportunity to be heard at a vacatur hearing. Indeed, at the vacatur hearing in this case, Ms. Feldman stated that the SAO would not object "in any way to someone being present and participating if they wanted to," and the court permitted Mr. Lee to speak, albeit on Zoom. Although a victim does not have a statutory right to be heard, there are valid reasons to allow a victim that right in a vacatur hearing, and the court has discretion to permit a victim to address the court regarding the impact the court's decision will have on the victim and/or the victim's family.

## VII.

### Remedy

Having determined that Mr. Lee's rights to notice and to attend the vacatur hearing were violated, we turn to the appropriate remedy. As indicated, CP § 11-103(e)(2) and (3) provide that a court may grant a victim relief when the victim's rights were denied if the remedy does not violate the defendant's double jeopardy rights, and if the remedy modifies a sentence of incarceration, the victim requests relief within 30 days.

Here, Mr. Lee sought relief within 30 days by filing his notice of appeal. The remedy he seeks is to vacate the circuit court's order vacating Mr. Syed's convictions and sentence and order a new hearing on the State's motion to vacate the convictions, where his right to notice and to attend be honored. We can provide that remedy only if it does

65

not violate Mr. Syed's "constitutional right . . . to be free from double jeopardy." CP § 11-103(e)(2).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. "[D]ouble jeopardy invokes a number of distinct principles and prohibitions." *Moore v. State*, 198 Md. App. 655, 684 (2011). When dealing with a "phenomenon such as double jeopardy, it is indispensable at the outset to identify the particular species of double jeopardy being invoked." *Fields v. State*, 96 Md. App. 722, 725 (1993).

"The United States Constitution's Fifth Amendment Double Jeopardy Clause protects against three types of double jeopardy, derived from the 'three related common-law pleas' of autrefois acquit, autrefois convict, and pardon." *Antoine*, 245 Md. App. at 558 (quoting *United States v. Wilson*, 420 U.S. 332, 340 (1975)). The plea of autrefois acquit provides that "the State cannot reprosecute a defendant after an acquittal." *Scott v. State*, 454 Md. 146, 152 (2017). The pleas of autrefois convict and pardon provide that "a criminal defendant may not be prosecuted twice for the same offense after conviction and may not be punished multiple times for the same offense." *Giddins v. State*, 393 Md. 1, 25–26 (2006).

Mr. Syed does not contend, for good reason, that vacating the order vacating his convictions would violate his right against double jeopardy. As explained below, we conclude that returning this case for a new vacatur hearing does not violate Mr. Syed's constitutional protection against double jeopardy.

66

Ordering a new vacatur hearing would not result in a second prosecution after conviction or acquittal. The result of a new vacatur hearing will be to either reinstate the initial conviction or vacate it again. There would not be a second prosecution.

Ordering a new vacatur hearing would not result in a second prosecution after acquittal for another reason, i.e., the grant of the motion to vacate was not an acquittal. An acquittal requires "a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Kendall v. State*, 429 Md. 476, 479 (2012). A ruling constitutes an acquittal for double jeopardy purposes if the court "depended on an evaluation of facts bearing on whether the defendants were guilty of the crimes charged." *Id.* at 487.

Here, the court's grant of the motion to vacate was not an acquittal. The court's decision to vacate Mr. Syed's convictions was based solely on whether the State established grounds for vacating the convictions pursuant to CP § 8-301.1. The court did not purport to be resolving any factual question relating to the charges against Mr. Syed, including whether he was guilty or innocent of the offenses charged. Thus, the grant of the motion to vacate did not trigger the protection against double jeopardy.

Additionally, the State's entry of the nol pros was not an acquittal. It is well established that "a nolle prosequi is not an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or different count." *Ward*, 290 Md. at 84. "[T]here is nothing inherent in the nature of a nolle prosequi which causes its entry to operate as an acquittal of the underlying offense." *Id.* at 85. Accordingly, the violation of Mr. Lee's rights can be remedied without violating Mr. Syed's constitutional right to be free from double jeopardy.

67

# VIII.

## Conclusion

Because the court violated Mr. Lee's right to notice of, and his right to attend, the hearing on the State's motion to vacate, in violation of CP § 8-301.1(d), "we have the power and obligation to remedy that injury." *Antoine*, 245 Md. App. at 561. Therefore, we vacate the circuit court's order vacating Mr. Syed's convictions and sentence, which results in the reinstatement of the original convictions and sentence. We remand for a new, legally compliant, transparent hearing on the motion to vacate, where Mr. Lee is given notice of the hearing that is sufficient to allow him to attend in person, evidence supporting the motion to vacate is presented, and the court states its reasons in support of its decision.

Mr. Lee argues that, at the remand hearing, he should be "permitted to mount a credible challenge to the evidence supporting vacatur." To that end, he requests that this Court "appoint him as a limited-purpose party-in-interest," or alternatively, appoint the Attorney General's Office or other suitable entity, to challenge the evidence during a new hearing. That request is denied.

We will exercise our discretion to stay the effective date of the mandate for 60 days from the issuance of this opinion. That gives the parties time to assess how to proceed in response to this Court's decision.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 50%**

**BY THE MAYOR & CITY COUNCIL OF
BALTIMORE AND 50% BY ADNAN SYED.**

Circuit Court for Baltimore City
Case No. 199103042

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1291

September Term, 2022

_____

YOUNG LEE, AS VICTIM'S
REPRESENTATIVE

v.

STATE OF MARYLAND, ET AL.

_____

Wells, C.J.,
Graeff,
Berger,

JJ.

_____

Dissenting Opinion by Berger, J.

_____

Filed:  March 28, 2023

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

I, respectfully, dissent. In my view, this appeal was rendered moot by the State's entry of a nol pros[1] following the grant of the State's vacatur motion. I disagree with the Majority that the nol pros was a legal nullity. Nonetheless, because this case presents issues that are likely to recur and evade review as well as matters of important public concern, I would exercise discretion to consider the merits. On the merits, I agree with the Majority's analysis in Part VI of the Majority Opinion, in which the Majority held that Mr. Lee had no right to be heard at the vacatur hearing. Where I part ways with the Majority on the merits, however, is with respect to the notice provided to Mr. Lee as well as his right to attend. In my view, the timing of the notice in relation to the hearing should not be considered in a vacuum, but rather, in the context of whether the notice was adequate to enable the victim or victim's representative to attend. I would not find a violation of the victims' rights statute in this unique case when Mr. Lee was notified -- albeit one business day before the vacatur hearing -- and ultimately attended the vacatur proceeding electronically.

## I. Mootness

I take no issue with the Majority's articulation of the mootness standard, *i.e.*, that a case is generally moot if no controversy exists between the parties or when the court can

---

[1] "A nolle prosequi, or nol pros, is an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *Huntley v. State*, 411 Md. 288, 291 n.4 (2009). "[W]hile a nolle prosequi discharges the defendant on the charging document or count which was nolle prossed, and while it is a bar to any further prosecution under that charging document or count, a nolle prosequi is not an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or different count." *Id.* (quotation omitted).

no longer fashion an effective remedy. The Majority's determination that this appeal is not moot is premised upon its conclusion that the nol pros was void and constituted a legal nullity. I, respectfully, disagree that the nol pros was a legal nullity.

As the Majority acknowledges, the State's Attorney generally has broad discretion to enter a nol pros. *State v. Simms*, 456 Md. 551, 561 (2017). Although the Supreme Court of Maryland (at the time named the Court of Appeals of Maryland)[2] has acknowledged that the State's power to nol pros is "not absolute" or "without restraint," *Hook v. State*, 315 Md. 25, 35–36 (1989), the actual limits that have been imposed upon the State's authority to nol pros are quite narrow. Indeed, it is well established that the State may not enter a nol pros that has the purpose or necessary effect of circumventing the *Hicks* rule, *i.e.*, the defendant's right to a trial within 180 days.[3] *Curley v. State*, 299 Md. 449, 462 (1984). The Supreme Court most recently addressed limits on the State's authority to nol pros in the case of *Simms*, *supra*, 456 Md. at 551. The Majority reads *Simms* and *Hook* as generally limiting the State's authority to enter a nol pros when doing so would violate fundamental fairness, and, in some instances, circumvent the right to appeal. In my view, as I shall

---

[2] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022. *See also* Md. Rule 1-101.1(a) ("From and after December 14, 2022, any reference in these Rules or, in any proceedings before any court of the Maryland Judiciary, any reference in any statute, ordinance, or regulation applicable in Maryland to the Court of Appeals of Maryland shall be deemed to refer to the Supreme Court of Maryland . . . .").

[3] *State v. Hicks*, 285 Md. 310 (1979).

explain, the reasoning of *Simms* and *Hook* do not extend to the circumstances before us in this appeal.

In *Simms*, after a criminal defendant was convicted and sentenced, the defendant noted an appeal to this Court. 456 Md. at 554–55. The defendant raised arguments on appeal that the evidence was insufficient to support his convictions. *Id.* at 569. While the direct appeal was pending, but before oral arguments were held, the State nol prossed the charge underlying the defendant's conviction and sentence and subsequently moved to dismiss the defendant's appeal as moot. *Id.* at 555. On certiorari to the Supreme Court of Maryland, the State argued that the appeal was moot in light of the subsequent nol pros. The Supreme Court held that the case was not moot because the State "does not have the authority to enter a nol pros after a final judgment has been entered against a defendant in a criminal case." *Id.* at 576. The Court emphasized that "[t]he State had no authority to use its power to nol pros to alter a final judgment entered in favor of or against a criminal defendant. Final judgment is the boundary of the State's discretion to enter a nolle prosequi." *Id.* The Court, therefore, determined that "the nol pros entered in the trial court as to the charge underlying the conviction and sentence was simply a nullity, 'improper' and therefore 'ineffective.'" *Id.*

The Majority also looked to *Hook*, *supra*, 315 Md. at 43–44, which held that it was "fundamentally unfair" for the State to nol pros a lesser included offense when the evidence was sufficient to convict the defendant of either a greater offense or lesser included offense. The Supreme Court explained that "the exceptional circumstances of this case present a rare occasion calling for a tempering of the broad authority vested in a State's Attorney to

3

terminate a prosecution by a nolle prosequi," observing that the State's conduct in nol prossing the lesser included offense "was inconsistent with the rudimentary demands of fair procedure." *Id.* at 41–42.

The Majority asserts that the State's entry of a nol pros under the circumstances presented in this case violated the requirement that a nol pros conform "to the rudimentary demands of fair procedure" as articulated in *Hook*, *supra*, 315 Md. at 42. The Majority further emphasizes that the nol pros resulted in an injustice to Mr. Lee because it prevented appellate review and prevented victims from receiving the rights to which they are entitled. I do not read *Simms* or *Hook* nearly as broadly as the Majority. First, I observe that the fundamental fairness principle discussed in *Hook* focused upon the fair procedure owed to a criminal defendant whose liberty interest was at stake. "The State of Maryland has expressed a clear public policy . . . to provide broad rights to crime victims . . . in both Maryland's trial and appellate courts." *Antoine v. State*, 245 Md. App. 521, 539 (2020). Indeed, those rights are enshrined in the Maryland Constitution, which recognizes a victim's right to "be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process." Md. Const. Decl. of Rts., art. 47(a). Victims' rights, however, are not the same rights as those granted to criminal defendants, and I would not extend the fundamental fairness principle articulated in *Hook* to the situation presented in this appeal.

Furthermore, I would not extend the holding of *Simms* to the circumstances presented in this appeal. The *Simms* Court held that "after a defendant has received a final judgment in the form of a conviction and sentencing, the State may not enter a nolle

4

prosequi to alter the final judgment. Upon conviction and sentencing based upon an underlying charge, the underlying charge is no longer pending and the State's authority to enter a nol pros has ended." 456 Md. at 578. Unlike *Simms*, this case did not involve a final judgment in the form of a conviction and sentencing. At the time the State entered the nol pros, there was no underlying conviction. I do not read *Simms* as restricting the State's authority to enter a nol pros after the grant of a motion to vacate a conviction.

I would hold that the State acted within its broad authority to enter a nol pros following the vacatur ruling. Indeed, it is well established that trial courts "are not stripped of their jurisdiction to take post-judgment action simply because an appeal is pending from that judgment." *Cottman v. State,* 395 Md. 729, 740 (2006).[4] "[A]bsent a stay required by law, or one obtained from an appellate court," the trial court "has the authority to exercise the 'fundamental jurisdiction' which it possesses." *Id.* at 740–41 (quotation omitted).

In my view, this case is more similar to *Cottman*, in which the circuit court granted the defendant a new trial when the defendant's conviction was pending on appeal. *Id.* at 736–37. The Supreme Court determined that the "appeal became moot the instant that the [c]ircuit [c]ourt granted him a new trial." *Id.* at 743. The appeal in the instant case similarly became moot when the State entered a nol pros. Moreover, I emphasize that Md. Rule

---

[4] The Majority considers the out-of-state cases of *Sanders v. State*, 869 S.E.2d 411 (Ga. 2022) (holding the nol pros of a reindictment was a nullity when the denial of a first indictment was pending on appeal), and *Commonwealth v. Hudson*, 92 A.3d 1235 (Pa. Super.), *appeal denied*, 106 A.3d 724 (Pa. 2014) (holding that there was no authority to enter a nol pros while an appeal of a grant of a motion to suppress was pending). The Majority acknowledges, however, that in Maryland, unlike *Sanders* and *Hudson*, trial courts are "not stripped of their jurisdiction to take post-judgment action." *Cottman*, *supra*, 395 Md. at 740.

5

4-333(i) provides that "[w]ithin 30 days after the court enters an order vacating a judgment of conviction or probation before judgment as to any count, the State's Attorney *shall* either enter a nolle prosequi of the vacated count or take other appropriate action as to that count." (Emphasis provided.) Indeed, the State acted consistently with this mandatory Maryland Rule when entering the nol pros in this case.[5]

The Majority's holding that the nol pros was "void" and a "nullity" is the basis upon which the Majority concludes that this appeal is not moot. The Majority characterizes this case as presenting "exceptional circumstances" that "exist to temper the authority of the State to enter a nol pros." I would hold the State acted within its authority to dismiss the charges when it entered a nol pros after the circuit court vacated Mr. Syed's convictions. The nol pros was "not void *ab initio* for lack of jurisdiction to enter it." *Cottman*, *supra*, 395 Md. at 742. Following the entry of the nol pros in this case, Mr. Syed was no longer a defendant in a criminal case. In my view, there is no underlying case in which to enter a remand, rendering this appeal moot.

Nevertheless, I am persuaded that this appeal presents unresolved issues that are capable of repetition, yet evading review and that involve matters of important public concern. *See In re S.F.*, 477 Md. 296, 318–19. Accordingly, I would exercise discretion to undertake appellate review of the merits.

---

[5] If the General Assembly or Rules Committee wished to provide a specific exception to the 30-day requirement for entry of a nol pros if an appeal of the vacatur ruling was pending, they certainly could have done so.

## II. Merits

The Majority rejects Mr. Lee's assertion that he should have been provided more notice of the filing of the vacatur motion in this case, as well as Mr. Lee's contention that he should have been provided with notice of and the opportunity to attend the chambers discussion that occurred on Friday, September 16, 2022. I agree with the Majority on both of the above points. Where I part ways with the Majority is with respect to the notice required for the vacatur hearing on Monday, September 19, 2022. I would hold that the notice sufficiently complied with the requirements of the statute because, critically, it enabled Mr. Lee to attend the proceeding via electronic means.

Md. Code (2001, 2018 Repl. Vol., 2021 Supp.), Section 8-301.1 of the Criminal Procedure Article ("CP") sets forth the procedure by which the State may move to vacate a judgment of conviction. With respect to notice to a victim or victim's representative, the statute requires that "[b]efore a hearing on a motion filed under this section, the victim or victim's representative shall be notified, as provided under § 11-104 or § 11-503 of this article." CP § 8-301.1(d). Maryland Rule 4-333(g)(2) further provides that "the State's Attorney shall send written notice of the hearing to each victim or victim's representative, in accordance with Code, Criminal Procedure Article, § 11-104 or § 11-503. The notice shall contain a brief description of the proceeding and inform the victim or victim's representative of the date, time, and location of the hearing and the right to attend the hearing." "If the . . . victim or victim's representative entitled to notice under . . . this Rule is not present at the hearing, the State's Attorney shall state on the record the efforts made to contact that person and provide notice of the hearing." Md. Rule 4-333(h)(1).

7

I agree with the Majority that the notice requirement must be interpreted consistently with the constitutional and statutory mandate that crime victims "be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process." Md. Const. Decl. of Rts., art. 47(a), CP § 11-1002(b)(1). I further agree with the Majority that the notice requirement must be interpreted consistently with the legislative intent that a victim has the right to notice and to attend the vacatur hearing. I do not, however, agree that the notice in this case was unreasonable simply because Mr. Lee was notified of the hearing date one business day prior to the hearing. In my view, the notice requirement must be considered in concert with the right to attend, and, in this case, Mr. Lee was ultimately able to attend the vacatur hearing, albeit electronically. As such, the timing of the notice in relation to the hearing is not considered in a vacuum but, rather, in the context of whether the notice was adequate to enable the victim or victim's representative to attend. One business day's notice might not have been reasonable if an electronic attendance option were unavailable, and I generally echo the concerns of the Majority regarding the short time period between when the victim was notified and the vacatur hearing was held. Critically, however, in this instance, Mr. Lee was permitted to and did attend the proceedings electronically.

The Majority holds that attendance via Zoom was insufficient to satisfy Mr. Lee's right to attend the vacatur hearing. The Majority acknowledges that Zoom hearings became commonplace throughout Maryland during the COVID-19 pandemic, but emphasizes that this case did not involve a virtual hearing due to COVID-19 health concerns. The Majority further emphasizes that CP § 8-301.1(d)(2) was enacted prior to

8

the COVID-19 pandemic and the General Assembly presumably anticipated in-person attendance when it drafted the statute.

The Majority points to Maryland Rules 2-802(a) and 2-803(a), which provide, respectively, that a court "may permit or require . . . participants to participate in a non-evidentiary proceeding by means of electronic participation," Md. Rule 2-802(a), but "may permit . . . participants to participate in an evidentiary proceeding by means of remote electronic participation." Md. Rule 2-803(b). The Majority acknowledges that Maryland Rules 2-802 and 2-803 are applicable to civil matters, not criminal matters. Nonetheless, the Majority posits that principles from these rules inform the analysis in this case.

The Majority emphasizes that, at least in civil cases, the court is not specifically authorized to "require" electronic participation in evidentiary proceedings but is specifically authorized to "require" electronic participation in non-evidentiary proceedings. The Majority is of the view that, similar to the rule preventing a court from requiring a participant to participate in an evidentiary proceeding in a civil case remotely, a court is not permitted to require a victim, who has a right to attend a vacatur proceeding, to attend the proceeding remotely. I disagree.

Even if one were to assume that the principles of Maryland Rules 2-802 and 2-803 apply in the context of this criminal case, I find it notable that Rules 2-802 and 2-803 apply to participants -- not to other individuals who may have the right to attend. Mr. Lee does not satisfy the definition of "participant" under Rules 2-802 and 2-803. For the purposes of Maryland Rules 2-802 and 2-803, "participant" is defined as "a party, witness, attorney for a party or witness, judge, magistrate, auditor, or examiner, and any other individual

9

entitled to speak or make a presentation at the proceeding." Md. Rule 2-801. Mr. Lee, as a victim's representative, does not fall under this definition. The Majority held, and I agree, that Mr. Lee had no right to be heard, present evidence, or otherwise participate in any way at the vacatur hearing. Notably, a victim, or a victim's representative, is not a party to a criminal proceeding. *Hoile v. State*, 404 Md. 591, 606 (2008) ("There are only two parties, the State of Maryland and Hoile.") (citing *Lopez-Sanchez v. State*, 388 Md. 214, 226 (2005) ("The victim is not a party to the proceeding . . . although vested with statutory and constitutional rights . . . ."), *superseded by statute on other grounds,* 2006 Md. Laws Ch. 260 (S.B. 508), *as recognized in Hoile*, *supra*, 404 Md. at 605).

In my view, there are distinct differences between remote participation and in-person participation that are not implicated when an individual has the right to attend but not participate. It is conceivable that an in-person presentation might be more compelling to a fact-finder than a presentation made via electronic means. These concerns are not implicated when an individual has the right to attend but not to participate. Section 8-301.1 of the Criminal Procedure Article provided Mr. Lee the right to *attend* the vacatur hearing, not to *participate*. I would hold that Mr. Lee's attendance via Zoom was sufficient to satisfy this requirement.

The record reflects that the circuit court judge took careful steps to ensure that Mr. Lee had been notified and was afforded the opportunity to attend the vacatur hearing via Zoom. At the beginning of the hearing, the circuit court asked the prosecutor to explain "specifically what notice the State gave to the victim's family in this case." The prosecutor explained that she spoke with Mr. Lee on the telephone on Tuesday, September 13, 2022

10

and informed him that the State would be filing a motion to vacate.  The prosecutor "went

through the motion a bit with him" and "sent him a copy of the motion that day."  The

motion was filed on September 14, 2022.

After the chambers conference on Friday, September 16, 2022, the prosecutor

emailed Mr. Lee at 1:59 p.m. to inform him of the date of the vacatur hearing.  The email

informed Mr. Lee that "[t]he court just scheduled an in-person hearing for Monday,

September 19th at 2:00 PM (EST)."  The prosecutor explained that although it was an

"in-person hearing," she had "asked the court permission for [Mr. Lee] and [his] family to

watch the proceedings virtually if [they] would like to watch."  The prosecutor included a

Zoom link and asked Mr. Lee to "[p]lease let [her] know if anybody from [the] family will

be joining the link" so that she could "make sure the court lets [them] into the virtual

courtroom."

The prosecutor explained that she did not receive a response to her email, so she

followed up with Mr. Lee via text message on Sunday, September 18.  Mr. Lee responded

via text.  He told the prosecutor that he had received the email and stated that he "will be

joining."  On the morning of the vacatur hearing, counsel entered an appearance for Mr.

Lee and moved to postpone the hearing.  At the outset of the vacatur hearing, after

considering argument from the parties, the circuit court denied the motion to postpone.[6]

The court explained that it would "give [counsel for Mr. Lee] time to . . . get Mr. Lee and

_____

[6] I shall not restate the details surrounding the argument on the motion to postpone.
I take no issue with the Majority's summary of this issue.

11

have him join this Zoom." The court stated that "if [Mr. Lee] wants to speak, [the court] will allow him to speak first."

Counsel for Mr. Lee informed the court that he was "unable to advise [his] client" because he was "at work at this point." The court asked counsel for Mr. Lee to step outside of the courtroom to "call Mr. Lee and see what he wants to do." After telephoning his client, counsel for Mr. Lee informed the court that he "was able to reach [Mr. Lee]" and requested thirty minutes for Mr. Lee to get home from work "to a private place where [h]e can participate." The court granted this request and announced a thirty-minute recess at 2:44 p.m. The court reconvened at 3:35 p.m. Mr. Lee was present via Zoom and made a statement.[7] After Mr. Lee's statement, the circuit court thanked Mr. Lee and acknowledged "how difficult" and "very emotional" the day was for him. The court told Mr. Lee that it "appreciate[d] him joining the Zoom this afternoon to make this statement because it is important to hear from the victim or the victim's representative."

Therefore, not only did Mr. Lee "attend" the proceeding -- albeit virtually -- as was his right under both the vacatur and the victims' rights statutes, but the trial judge permitted both Mr. Lee and his counsel to address the court during the proceedings, something the Majority and I both agree neither statute requires. Indeed, in addressing Mr. Lee's counsel, the trial judge noted that:

> [Y]our client indicated that he would participate via Zoom. I don't think Zoom is foreign anymore. I think everyone knows what Zoom is. Participate, you know, we do victim's rights, I do it every day on Zoom and the victims come on and they give their victim's impact statements. And it's

---

[7] Mr. Lee's full statement is reproduced in the Majority's Opinion.

12

recorded and it's recorded in the courtroom with this blue man, which is CourtSmart.

So they [the representatives of the victims] have every opportunity to participate. And, I'm giving your client, your client the opportunity to participate now via Zoom if he'd like to speak I will hear from him.

Accordingly, the court acknowledged that Zoom was a practical and serviceable method that courts had been using to allow remote participation in court proceedings. Ultimately, the court provided Mr. Lee with both the attendance he was entitled to, and the judge exercised her discretion in affording him the opportunity to participate. Under the circumstances, I disagree with the Majority that Lee's attendance, via Zoom, did not satisfy his rights, as a victim's representative, to attend the proceedings.

In no way do I intend to minimize the pain suffered by Mr. Lee and by all crime victims and their families, and I recognize the important protections granted to victims and victims' representatives under the Maryland Constitution and by statute. Nonetheless, in my view, the procedure afforded to Mr. Lee in this case was sufficient to satisfy the requirements of the applicable statute. I would hold that the notice Mr. Lee received was sufficient to comply with the requirements of CP § 8-301.1 and Md. Rule 4-333 because it enabled him to attend the vacatur proceeding electronically. Though it was not required to do so, and would not be required to do so on remand, *see Maj. Op. Part VI*, the circuit court permitted Mr. Lee to be heard at the vacatur hearing. In my view, it is for the General Assembly to impose more specific requirements regarding the timing of notice to victims and victims' representatives for vacatur hearings if it is inclined to do so. Similarly, the Rules Committee could recommend and the Supreme Court could adopt more specific

13

requirements.  Accordingly, I would affirm the judgment of the Circuit Court for Baltimore

City.  For these reasons, I, respectfully, dissent.